[No. B191035. Second Dist., Div. Three. Apr. 22, 2008.]

SHARON R. EDWARDS, Plaintiff and Respondent, v.
OSCAR L. EDWARDS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for partial
publication. The portions of this opinion to be deleted from publication are those portions
enclosed within double brackets, [[ ]].

COUNSEL

Anita Grace Edwards for Defendant and Appellant.

Lisa M. Garrett and Tammy Nakada for Plaintiff and Respondent.

OPINION

KLEIN, P. J.—Oscar L. Edwards (Oscar) appeals a postjudgment order denying his motion to terminate child support or to reduce it to zero based on

a change of circumstances.[1] In response to Oscar's motion, the trial court reduced child support for his adult son, Oscar Jr., from $700 per month to $432 per month, pursuant to the statewide uniform guideline for determining child support. (Fam. Code, § 4055.)[2]

The essential issue presented is the applicability of the statutory support guideline to a competent adult child who has moved away to college.

We conclude that in these circumstances, where neither parent retains "primary physical responsibility" (§ 4055, subd. (b)(1)(D)) for the adult child for any percentage of time, the guideline formula, by its terms, is inapplicable. Stated another way, application of the guideline formula "would be unjust or inappropriate" under the particular circumstances of this case. (§ 4057, subd. (b)(5).) Therefore, the order is reversed with directions.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Oscar and his former spouse, Sharon R. Edwards (Sharon) were married in 1982, had a son in 1984, and were separated in 1986.

### 1. *The provisions for extended child support and educational support.*

In 1990, Oscar and Sharon entered into a marital settlement agreement (MSA). The MSA included a provision for extended child support beyond the age of majority, stating: "Subject to the power of the court to modify the same, [Oscar] shall pay to [Sharon], as and for child support, the sum of $200 per month, payable on the 10th day of each month, said payments began on . . . March 15, 1990, and shall continue for the Minor Child until further order of this court or until he marries, dies, becomes self-supporting, emancipated,[4] *reaches the age of 25*, or completes 4 years of post-secondary education, *whichever occurs first.*" (Italics added.)

In addition to the provision for extended child support, the MSA contained a provision for Oscar Jr.'s educational support. In that regard, the MSA

---

[1] As is customary in family law cases, we refer to the parties by their first names for purposes of clarity and not out of disrespect. (See *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1 [30 Cal.Rptr.2d 306]; *Askew v. Askew* (1994) 22 Cal.App.4th 942, 947, fn. 6 [28 Cal.Rptr.2d 284].)

[2] All further statutory references are to the Family Code, unless otherwise specified.

[3] This factual summary is based in part on our previous decision in *Edwards v. Edwards* (Nov. 22, 2005, B172917) (nonpub. opn.) (hereafter, *Edwards*).

[4] As we noted in our previous decision in this matter, it is self-evident that "emancipated" in this context does not mean reaching the age of majority. If "emancipated" here meant attaining the age of 18, the alternative provision for child support to continue until the minor "reaches the age of 25" never would apply and would be rendered pure surplusage. (*Edwards, supra,* B172917.)

provided: "[i]*n addition, during the term of the support obligation for Minor Child, the parties shall equally share in the entire cost of books, tuition, incidental fees, living expenses for the Minor Child if he attends an accredited college, university, or private school.* Such obligation shall end for the Minor Child either upon completion of four years of post-secondary schooling *or at age 25, whichever comes first.*" (Italics added.)[5]

### 2. *The stipulated judgment and subsequent proceedings.*

On August 7, 1990, in accordance with the terms of the MSA, the trial court entered a stipulated judgment of dissolution. At that time, the judgment required Oscar to pay Sharon $200 per month in child support.

In 1991, at Sharon's request, the county became involved in enforcing Oscar's child support obligations.

In 1998, Oscar, Sharon and the district attorney entered into a stipulated order setting child support at $400 per month.

In 1999, following a contested hearing, the trial court issued an order increasing Oscar's child support obligation to $700 per month.

### 3. *Oscar's motions to terminate and to modify child support.*

On June 12, 2003, Oscar filed another motion to terminate child support on the ground support terminated *by operation of law* when the minor child turned 18 and graduated from high school.

On November 14, 2003, the trial court denied the motion to terminate child support. The trial court ruled there had been no change in the terms of the support order to terminate support prior to age 25.

On December 30, 2003, Oscar filed another motion to modify the existing child support order of $700 per month based on a *change of circumstances.*

---

[5] Section 3901, pertaining to the duration of the duty of child support, states: "(a) The duty of support imposed by Section 3900 continues as to an unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first. [¶] (b) Nothing in this section limits a parent's ability to agree to provide additional support or the court's power to inquire whether an agreement to provide additional support has been made." Further, section 3587 provides: "Notwithstanding any other provision of law, the court has the authority to approve a stipulated agreement by the parents to pay for the support of an adult child or for the continuation of child support after a child attains the age of 18 years and to make a support order to effectuate the agreement."

The parties herein are to be commended for committing to provide for Oscar Jr.'s higher education.

Oscar requested either a termination of child support or an order reducing it to zero until such time as circumstances warranted otherwise. Oscar indicated his annual income had declined since 1999 from $87,552 to $38,304, he has two minor children with his current spouse, Oscar Jr. was no longer in the custody of either parent and was attending a state university in Northern California on a full financial aid package.

On January 13, 2004, Oscar filed notice of appeal from the trial court's November 14, 2003 order denying his motion to terminate support.

The trial court continued the hearing on Oscar's motion to modify child support pending the determination of the appeal from the denial of Oscar's motion to terminate support.

On November 22, 2005, this court affirmed the trial court's decision denying Oscar's motion to terminate child support, ruling that "Oscar, having stipulated in the first instance to pay child support to age 25, is estopped to challenge the validity of the 1990 judgment in that regard." We concluded Oscar's "remedy is to seek a modification of support based on an alleged change of circumstances, a remedy which he apparently is pursuing." (*Edwards, supra*, B172917, italics omitted.)

On March 16, 2006, the trial court held the long-delayed hearing on Oscar's motion to modify child support. The trial court applied the statutory guideline formula for calculating child support (§ 4055) and determined that child support would be modified from $700 to $432 per month, commencing January 1, 2004. With respect to the issue of time-sharing responsibility, the trial court assigned zero percent to Oscar and 100 percent to Sharon, even though neither parent had custody of Oscar Jr., an adult who had moved away to college.

On May 11, 2006, Oscar filed notice of appeal from the order modifying child support to $432 per month.

On June 15, 2006, the trial court issued its intended statement of decision. On June 26, 2006, Oscar objected to the statement of decision as untimely. On July 14, 2006, having reviewed Oscar's objections, the trial court filed its statement of decision.

## CONTENTIONS

Oscar contends: the trial court abused its discretion in failing to vary from the presumptively correct formula support amount in light of substantial evidence of rebuttal factors that the formula would be unjust or inappropriate

in this case; even assuming the guideline applies, the trial court erred in applying the time-sharing component and in using outdated financial information; the trial court abused its discretion in improperly imputing 100 percent of the time Oscar Jr. was in college to Sharon; the trial court failed to consider whether the child support payable to Sharon should be terminated because Oscar Jr. had become self-supporting; and the order must be reversed because the trial court failed to render a timely statement of decision.

## DISCUSSION

1. *Standard of appellate review.*

" ' "[T]he trial court's determination to grant or deny a modification of a support order will ordinarily be upheld on appeal unless an abuse of discretion is demonstrated." [Citation.] Reversal will be ordered only if prejudicial error is found after examining the record of the proceedings below. [Citation.] However, questions relating to the interpretation of statutes are matters of law for the reviewing court. [Citation.]' [Citation.]" (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1150–1151 [62 Cal.Rptr.2d 466] (*Drake*).)

To the extent Oscar challenges the trial court's factual findings, our review follows established principles concerning the existence of substantial evidence in support of the findings. On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. (*Drake, supra*, 53 Cal.App.4th at p. 1151.)

2. *Trial court erred in determining child support pursuant to the guideline formula because neither parent retains physical responsibility for Oscar Jr., rendering the guideline inapplicable.*

a. *Statutory scheme.*

Section 4055, subdivision (a), provides: "(a) The statewide uniform guideline for determining child support orders is as follows: CS = K (HN - (H%) (TN))."[6]

---

[6] The components of the formula are as follows: "(A) CS = child support amount. [¶] (B) K = amount of both parents' income to be allocated for child support as set forth in paragraph (3). [¶] (C) HN = high earner's net monthly disposable income. [¶] (D) *H% = approximate percentage of time that the high earner has or will have primary physical responsibility for the children compared to the other parent.* In cases in which parents have different time-sharing arrangements for different children, H% equals the average of the

Section 4057 provides: "(a) *The amount of child support established by the formula provided in subdivision (a) of Section 4055 is presumed to be the correct amount of child support to be ordered.* [¶] (b) *The presumption of subdivision (a) is a rebuttable presumption affecting the burden of proof and may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case,* consistent with the principles set forth in Section 4053, *because one or more of the following factors is found to be applicable by a preponderance of the evidence,* and the court states in writing or on the record the information required in subdivision (a) of Section 4056: [¶] (1) The parties have stipulated to a different amount of child support under subdivision (a) of Section 4065. [¶] (2) . . . [¶] (3) The parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children. [¶] (4) A party is not contributing to the needs of the children at a level commensurate with that party's custodial time. [¶] (5) *Application of the formula would be unjust or inappropriate due to special circumstances in the particular case. These special circumstances include, but are not limited to,* the following: [¶] (A) Cases in which the parents have different time-sharing arrangements for different children. [¶] (B) Cases in which both parents have substantially equal time-sharing of the children and one parent has a much lower or higher percentage of income used for housing than the other parent. [¶] (C) Cases in which the children have special medical or other needs that could require child support that would be greater than the formula amount." (Italics added.)

### b. *Trial court's ruling.*

In this regard, the trial court ruled: "Although the code section is not exhaustive, there does not appear to be any reason to find 'special circumstances' in this matter. The motion was filed at a time when both parents' income and tax status was known. Oscar Jr. lived with Sharon for the year until he went off to college. The MSA and judgment set out that child support would continue for him until age 25 so long as none of the circumstances eliminating the support obligation occurred. Absent some special language in the MSA and judgment for the post high school graduation period, § 4057 (a) applies. [¶] This case does not appear to fall into any of the enumerated sections and the court does not find any 'special circumstances' to deviate from the guideline support formula. The time share of the parties in the year prior to filing is dealt with in the calculation of timeshare, H% and is not a 'special circumstance' under Subdivision (b)(5) of § [4057]."

---

approximate percentages of time the high earner parent spends with each child. [¶] (E) TN = total net monthly disposable income of both parties." (§ 4055, subd. (b)(1), italics added.)

c. *The guideline formula, by its terms, is inapplicable because neither parent retains any physical responsibility for Oscar Jr., an adult who has moved away to college.*

 One of the essential factors in calculating child support pursuant to the guideline is the "approximate percentage of time that the high earner has or will have primary physical responsibility for the children compared to the other parent." (§ 4055, subd. (b)(1)(D).)

Here, neither parent retains "primary physical responsibility" for Oscar Jr. for any period of time. He turned 18 in November 2002. As an adult, Oscar Jr. is not in the custody of either parent.

Moreover, in August 2003, Oscar Jr. relocated to San Francisco to attend college. Since then, he has resided in San Francisco, initially in a dorm and later in an apartment.

In an income and expense declaration dated December 15, 2005, Sharon acknowledged: "Son attends San Francisco State University. Last year [2004] he came home for Christmas and a week for spring break with friends. During the summer he stayed to take classes to complete education in 4 years."

Nonetheless, Sharon contends she has "physical responsibility" for Oscar Jr. because when school is not in session Oscar Jr. returns to her home, his "stuff" is there, he receives mail there, and it is Oscar Jr.'s address of residence with the college. These circumstances, reflecting an ongoing familial bond, do not support the contention Sharon continues to have "primary physical responsibility" for Oscar Jr. within the meaning of the statute. (§ 4055, subd. (b)(1)(D).)

*Drake, supra*, 53 Cal.App.4th 1139, on which Sharon relies for her theory that she retains physical responsibility for Oscar Jr., is completely inapposite. In a case of first impression, *Drake* addressed the applicability of the child support guideline formula to adult children. (*Drake, supra*, 53 Cal.App.4th at p. 1155.) However, *Drake* involved the support of a mentally incapacitated adult child whose mother took "full responsibility for [his] physical situation and care." (*Id.* at pp. 1148, 1154, 1160.)[7]

In arguing against the applicability of the guideline, the father in *Drake* contended "the guideline formula is inapplicable to disabled adult children

---

[7] In *Drake*, the duty to support the adult child derived from section 3910, which states at subdivision (a): " 'The father and mother have an equal responsibility to maintain, to the extent of their ability, a child of whatever age who is incapacitated from earning a living and without sufficient means.' " (*Drake, supra*, 53 Cal.App.4th at pp. 1154–1155.)

because it incorporates 'time-sharing' as a factor, although many disabled adult children, including David, are not in the custody of either parent." (*Drake, supra*, 53 Cal.App.4th at p. 1160.)

*Drake* rejected that argument, explaining it did not "find any fatal inflexibility in the guideline formula concerning adjustments appropriate for cases involving children not under the supervision of either parent. [Citation.] [¶] Moreover, in the circumstances of this case, the trial court did not err in according Miriam [the mother] and her successors in interest credit for full physical responsibility for David under the guideline formula. 'The time-sharing adjustment is based on the parents' respective periods of primary physical *"responsibility"* for the children rather than physical "custody." Use of this terminology is purposeful: i.e., to clarify that [section] 4050 et seq. is not intended to alter current child custody law in any manner.' (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 6:168, p. 6-52.) *The record here discloses substantial evidence that Miriam and her successors in interest have had full responsibility for David's physical situation and care,* that [father] has no physical responsibility for David, and that [father] visited David only three times between May 1988 and June 1995." (*Drake, supra*, 53 Cal.App.4th at p. 1160, final italics added.)

■ In the instant case, there is nothing in the record to show that Oscar Jr. is anything but a competent adult. The fact Sharon receives mail for Oscar Jr. at her address, that he keeps some of his "stuff" at her home, and that he visits her from time to time, do not support the trial court's finding that Sharon has "primary physical responsibility" (§ 4055, subd. (b)(1)(D)) for Oscar Jr. for any percentage of time. In this fact situation, neither parent retains "primary physical responsibility" of their adult son for any period of time. Accordingly, the guideline formula, by its terms, is inapplicable. Stated another way, application of the guideline formula "would be unjust or inappropriate" due to the particular circumstances of this case. (§ 4057, subd. (b)(5).)

[[ ]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 136.

## DISPOSITION

The March 16, 2006 order modifying monthly child support from $700 to $432, effective January 1, 2004, is reversed. The matter is remanded to the trial court with directions to enter a new order reducing monthly child support to zero, effective January 1, 2004. Oscar shall recover costs on appeal.

Kitching, J., and Aldrich, J., concurred.