[No. C060549. Third Dist. July 7, 2010.]

In re the Marriage of BARBARA and WILLIAM C. SCHOPFER.
WILLIAM C. SCHOPFER, Appellant, v.
DANIEL C. BONEBRAKE, Respondent.

COUNSEL

Frank E. Dougherty and Matthew K. Purcell for Appellant.

Law Office of Derraugh Manion Dawson, Derraugh M. Dawson; Law Office of Kimball J.P. Sargeant and Kimball Sargeant for Respondent.

OPINION

**ROBIE, J.**—Following the death of his ex-wife, William C. Schopfer (father) shared custody of his daughter, Jennifer, with her stepfather, Daniel C. Bonebrake (stepfather). Pursuant to a court order, father also paid stepfather $900 each month in child support. Four months before Jennifer was expected to graduate from high school, however, and a month before she was to turn 18, father moved to reduce his child support obligation to zero. The trial court denied his motion.

On appeal, father contends the trial court erred in denying his request to modify support because under subdivision (a) of Family Code section 3951[1] and *Plumas County Dept. of Child Support Services v. Rodriquez* (2008) 161 Cal.App.4th 1021 [76 Cal.Rptr.3d 1] (*Rodriquez*), "the court lacked authority, as a matter of law, to [order] third party support absent an express agreement." Father also contends that because Jennifer was no longer a minor, neither he nor stepfather had "primary physical responsibility" for her for any period of time and therefore, under *Edwards v. Edwards* (2008) 162 Cal.App.4th 136 [75 Cal.Rptr.3d 458] (*Edwards*), it was error for the trial court to "maintain the previous guideline support order when timeshare could no longer be calculated."

We reject both arguments. First, we conclude neither section 3951(a) nor *Rodriquez* required the trial court to modify father's child support obligation

---

[1] All further section references are to the Family Code. For ease of reference, we will refer to subdivision (a) of section 3951 as section 3951(a).

to zero because, as the trial court found, father agreed to pay guideline child support to stepfather a year earlier, when the court made the order for $900 per month in support, and thus section 3951(a) was satisfied. Second, we conclude that a guideline child support order made during a child's minority that remains in effect after the child's 18th birthday because the child is a full-time high school student need not be modified simply because neither party has custody of the child after she turns 18. Accordingly, we will affirm the trial court's order denying father's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and Barbara Schopfer (now deceased) (mother) are the parents of Jennifer, born in August 1990. From the case number and title, it appears mother commenced this proceeding to dissolve the marriage in 1996. Judgment was presumably entered sometime thereafter, and mother apparently married stepfather after that.

In 2004, mother apparently assumed sole physical custody of Jennifer,[2] and father was ordered to pay mother $297 per month in child support.

In August 2006, mother died. At that time, a motion by father relating to custody and visitation was pending. Meanwhile, father continued to make his child support payments for six weeks after mother's death.

In October 2006, about the time father stopped paying child support, stepfather filed his own motion relating to custody and visitation.[3] Both custody motions were resolved in December 2006, when the court gave joint legal and physical custody of Jennifer to father and stepfather. At that time, both parties acknowledged Jennifer was living with stepfather, and the order provided that father's custodial time with her was subject to her agreement.

In the months that followed, Jennifer did not spend any time with father. Probably based on this fact, stepfather sought the assistance of the Department of Child Support Services (the department) in securing child support from father, and in April 2007 the department filed a motion for child support on behalf of stepfather.

In his response to that motion, father did not mention section 3951(a), nor did he oppose paying child support to stepfather on any other basis. Instead,

---

[2] *Stepfather asserted in a declaration that prior to December 2006, "Jennifer had lived in the sole physical custody of her Mother and me for a significant period of time (over 2 years)."* (Italics omitted.)

[3] It does not appear from the record when or how stepfather was joined as a party in this marital dissolution proceeding, but the propriety of his joinder is not disputed at this point.

he specifically requested that the court order him to pay stepfather $872 per month in guideline child support.

At a hearing in June 2007, the court ordered father to pay stepfather $900 per month in child support beginning in May 2007 (with arrears back to Oct. 2006). The court's guideline support calculation was based on Jennifer spending 100 percent of her time with stepfather and zero percent with father (just as father's proposed guideline support calculation had been).

In August 2007, at the recommendation of Jennifer's therapist and drug counselor, stepfather enrolled Jennifer in boarding school in Oregon. Father approved of the placement.[4] Following Jennifer's enrollment, stepfather was in contact with Jennifer's counselors on a weekly or biweekly basis, consulting with them on her academic and behavioral progress. Additionally, stepfather spoke with Jennifer about her activities by telephone at least weekly. Between October 2007 and February 2008, he visited with her on three weekends, and in June 2008 Jennifer spent a week at home with him. During this time, father had no physical contact with Jennifer. Jennifer also intended to come back to stepfather's home for visits in August and September and intended to return to stepfather's house following her graduation in December.

In July 2008, father filed an order to show cause (OSC) seeking to modify the prior order for child support to zero. Relying on *Rodriquez*, he argued "there is no statutory authority for the court to award child support to a non-parent custodian." He also argued that because Jennifer was now 18 years old[5] and in boarding school, the tuition for which was paid out of her mother's estate, a continued order for support to stepfather was inequitable.

Stepfather opposed father's request, arguing that father had a duty to support Jennifer until she graduated from high school, which he anticipated would occur in December 2008. Stepfather also asserted that the support he received for Jennifer had been used to help pay her boarding school tuition, which had been over $72,000 in the previous 11 months.

At the hearing on father's motion in August 2008, the court requested additional briefing on *Edwards*, which had been published four months earlier. In his brief, father relied on *Edwards* to argue that because Jennifer

---

[4] Father contends he agreed "under a provision that the child's estate (inheritance from [mother]) would pay for school," but there is no evidence in the record supporting this assertion.

[5] Technically, when father filed the OSC in July 2008, Jennifer's 18th birthday was still a month away, but the hearing on the OSC was set for after her birthday.

was 18 years old, neither he nor stepfather had "primary physical responsibility" for her and therefore guideline child support was inappropriate. Stepfather argued that *Edwards* was distinguishable because, unlike the adult child in *Edwards* who was in college, Jennifer had not yet graduated from high school.

In September 2008, the court heard further argument on father's motion. The court then implicitly denied the motion, ruling as follows: "The court finds that the facts in the present case can be distinguished from the *Rodriquez* case. [Father] agreed to pay guideline support in responsive pleadings filed on 05/30/07 and orders made in 06/01/07. The court finds that the child's attendance at boarding school does not impact [father]'s ongoing obligation." Father appeals from that order.

## DISCUSSION

Father contends the trial court erred in denying his request for modification of the prior child support order. "We review orders granting or denying a request for modification of a child support order for abuse of discretion. [Citations.] The trial court's exercise of its discretion must be 'informed and considered' [citations], and the trial court may not 'ignore or contravene the purposes of the law' [citation]. [¶] To the extent [father] challenges the trial court's factual findings, we review the findings for substantial evidence, considering the evidence in the light most favorable to the party who prevailed in the trial court." (*Rodriquez, supra,* 161 Cal.App.4th at p. 1026.) Questions of law, however, are subject to the independent review of this court. (*Ibid.*)

I

*Section 3951(a) Was Satisfied Here Because Father Agreed to Pay Guideline Child Support to Stepfather*

Relying on section 3951(a) and *Rodriquez,* father contends the trial court erred in denying his motion to reduce child support to zero because he was not bound to compensate stepfather for the support of Jennifer. He is wrong.

Section 3951(a) provides that "[a] parent is not bound to compensate the other parent, or a relative, for the voluntary support of the parent's child, without an agreement for compensation."[6]

---

[6] Section 3951, subdivision (b), provides that "[a] parent is not bound to compensate a stranger for the support of a child who has abandoned the parent without just cause." Father makes no argument that stepfather is a "stranger" to Jennifer, or that Jennifer abandoned father

In the trial court, stepfather took the position that his support of Jennifer was voluntary when he asserted that "[d]espite not having a duty to support [Jennifer], [stepfather] has been voluntarily contributing to Jennifer's emotional, physical, and financial wellbeing for many years." We question whether stepfather's support of Jennifer could be deemed "voluntary" for purposes of section 3951(a) when he had joint custody of her under a court order. We need not answer that question here, however, because by the time the court ruled on father's motion to modify support, Jennifer had turned 18 and *neither* party had custody of her.[7] We are aware of no authority that would impose a legal duty on stepfather to support the adult child of his deceased wife. Thus, we agree stepfather's support of Jennifer following her 18th birthday was voluntary. But that does not mean section 3951(a) required the trial court to reduce father's support obligation to zero.

Father admits that under section 3900 *he* has a duty to support Jennifer and under section 3901 that duty continues until she graduates from 12th grade or turns 19, whichever occurs first. His contention is that under section 3951(a) he is not bound to discharge that duty by paying child support to stepfather because he did not agree to compensate stepfather for stepfather's support of Jennifer. As the trial court properly found, however, father *did* agree to compensate stepfather when, in response to the child support motion the department filed against father on stepfather's behalf in 2007, father specifically requested that the court order him to pay guideline child support to stepfather. While it is true the amount of child support the court ordered was $28 more per month than the guideline figure father had proposed, father did not appeal the court's order, and the fact remains that father expressly consented to pay guideline child support to stepfather. That was all the "agreement for compensation" that was necessary to satisfy section 3951(a). By agreeing to pay guideline child support to stepfather and allowing a support order to be entered to that effect, father bound himself to compensate stepfather within the meaning of section 3951(a) by complying with the support order.

Nothing in *Rodriquez* alters this conclusion. In that case, the mother was awarded primary custody of the minor child and child support from the father. (*Rodriquez, supra,* 161 Cal.App.4th at p. 1025.) Eventually the child moved in with the mother's brother's family (the Andersens) and everyone agreed he could remain there until he completed high school. (*Ibid.*)

---

"without just cause." Accordingly, any such argument is forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

[7] By statute, a custody order applies only "during [the child's] minority." (§ 3022; see also § 2010, subd. (b) [in a marital dissolution proceeding, the court "has jurisdiction to inquire into and render any judgment and make orders . . . concerning" "[t]he custody of minor children of the marriage"].)

Initially, the mother gave the Andersens the child support father was sending her, along with some of her own money to cover the child's expenses. (*Rodriquez, supra,* 161 Cal.App.4th at p. 1025.) Later, however, the mother stopped sending her own money and sent the Andersens only the child support from the father. (*Ibid.*) The Andersens then asked the Plumas County Department of Child Support Services to assist them in obtaining an order of support against the mother. (*Ibid.*) The department filed a complaint for child support. (*Ibid.*)

The trial court dismissed the department's complaint because the mother was the custodial parent. (*Rodriquez, supra,* 161 Cal.App.4th at pp. 1025–1026.) The court concluded that absent an agreement between the mother and the Andersens, the mother was under no obligation to give money to the Andersens for the child's support. (*Ibid.*) The court found no such agreement. (*Id.* at p. 1026.) The department appealed. (*Ibid.*)

On appeal, this court concluded that "nothing in the statutes permitting the county to establish or enforce child support orders suggests that third party, nonparent family members such as the Andersens may enlist the local child support agency to prosecute an action to collect child support on their behalf." (*Rodriquez, supra,* 161 Cal.App.4th at p. 1028.) The court looked to section 3951(a): "This section, and its predecessor [citation], have long been interpreted to deny compensation in intrafamily support arrangements of the type at issue here, unless the parties have an express agreement for support." (*Rodriquez,* at p. 1028.)

*Rodriquez* does not assist father because there was no agreement for support in that case. Here, in contrast, father specifically agreed to pay guideline child support to stepfather in 2007.

Father contends "even if there had been an agreement in 2007," that did not preclude him "from arguing in 2008 that there should be no prospective support order" because under subdivision (a) of section 3651, with certain exceptions not applicable here, "a support order may be modified . . . at any time as the court determines to be necessary." Father acknowledges that generally "the moving party in a modification proceeding bears the burden of proof of showing changed circumstances that justify a new court order." (*In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1303 [83 Cal.Rptr.3d 72].) He contends, however, that this case falls within the one exception to the changed circumstances rule, identified in *Bardzik,* for modification of child support orders that do not conform to the guideline formula. In his view, "[t]he support order did not meet the guideline [once Jennifer turned 18] because there was no appropriate manner to calculate timeshare."

We will address father's argument about Jennifer turning 18 and its effect on guideline support in more detail later in the opinion. For now, however, it is sufficient to say that this case does *not* fall within the exception to the changed circumstances rule on which father relies. In *Bardzik*, the court explained that "there is one instance . . . where the moving party effectively bears no burden at all to show a change of circumstances," and that is "where a previous child support order does not already conform to the guideline formula in Family Code section 4055 (which would normally—unless something has gone wrong—be an order predating the adoption of section 4055). Section 4069 of the Family Code provides that the very existence of the guideline itself is enough by itself to modify an existing, preguideline support order to bring it into compliance with the guidelines set out in Family Code section 4055." (*In re Marriage of Bardzik, supra*, 165 Cal.App.4th at pp. 1303–1304; see § 4069 ["The establishment of the statewide uniform guideline constitutes a change of circumstances."].)

Here, father does not deny that the 2007 child support order he sought to modify postdated the establishment of the child support guideline. Thus, he cannot rely on the establishment of the child support guideline to satisfy the changed circumstances rule, which is all the "exception" discussed in *Bardzik* allows.

In the alternative, father contends "there were changed circumstances in this case sufficient for a modification of the prior support order" because "Jennifer had reached the age of majority, was no longer residing with [stepfather], and was no longer being supported by [stepfather] but rather by the trust set up for Jennifer's benefits after the passing of Jennifer's mother." None of these circumstances, however, relates to the basis for father's modification motion presently at issue—specifically, section 3951(a). Even if some circumstances changed between the 2007 order and father's 2008 modification motion, and even if one or more of those changes might have justified a modification of child support by altering the end result of the support calculation under the guideline formula, that does not mean father is suddenly empowered to belatedly assert section 3951(a) as a bar to any child support order whatsoever in favor of stepfather. Father had the opportunity to assert the bar of that statute in 2007, when the department moved for child support on stepfather's behalf, but he did not do so; instead, he consented to pay guideline child support to stepfather. Father's attempt to raise the bar of section 3951(a) *now*, after he already agreed to pay stepfather child support in 2007, effectively amounts to a collateral attack on the 2007 support order by way of a motion for modification, which is impermissible. (See *In re Marriage of Mulhern* (1973) 29 Cal.App.3d 988, 992 [106 Cal.Rptr. 78].)

For the foregoing reasons, we conclude the trial court did not err when it refused to modify father's child support obligation to zero based on section 3951(a).

II

*The Trial Court Did Not Err in Requiring Father to Pay*
*Child Support Past Jennifer's 18th Birthday, Despite Her*
*Attendance at Boarding School*

Relying on *Edwards*, father contends the trial court erred in denying his motion to modify the prior order for support because Jennifer was attending boarding school *and* was no longer a minor. We disagree.

In *Edwards*, the parties agreed that, subject to modification by the court, the father would pay child support until the child turned 25 years old or completed college. (*Edwards, supra*, 162 Cal.App.4th at p. 138.) After the child turned 18 and moved away to college on a full financial aid package, the father moved to terminate child support or reduce it to zero. (*Id.* at pp. 139–140.) The trial court reduced the father's support obligation from $700 to $432 per month pursuant to the guideline formula, assigning the father zero percent time-sharing responsibility as part of the calculation. (*Id.* at p. 140.)

On appeal, "[t]he essential issue presented [wa]s the applicability of the statutory support guideline to a competent adult child who has moved away to college." (*Edwards, supra*, 162 Cal.App.4th at p. 138.) The appellate court concluded that, under the circumstances presented, "the guideline formula, by its terms, [wa]s inapplicable." (*Ibid.*) In reaching its decision, the court reasoned that "[o]ne of the essential factors in calculating child support pursuant to the guideline is the 'approximate percentage of time that the high earner has or will have primary physical responsibility for the children compared to the other parent.' (§ 4055, subd. (b)(1)(D).) [¶] Here, neither parent retains 'primary physical responsibility' for [the child] for any period of time. He turned 18 in November 2002. As an adult, [the child] is not in the custody of either parent. [¶] Moreover, in August 2003, [the child] relocated to San Francisco to attend college." (*Id.* at p. 143.)

■ In reaching its decision, the *Edwards* court distinguished *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139 [62 Cal.Rptr.2d 466], which involved a similar argument applied to the support of a mentally incapacitated adult child. In *Drake*, the court first concluded that the statewide uniform child support guideline applies not only to minor children, but also to adult children (where a duty to support an adult child exists). (*Drake*, at

pp. 1155–1157.) The court then rejected the argument "that the guideline formula is inapplicable to disabled adult children because it incorporates 'time-sharing' as a factor, although many disabled adult children . . . are not in the custody of either parent." (*Id.* at p. 1160.) The *Drake* court explained that physical "responsibility," which is the factor used in the guideline formula, is not the same as physical "custody," and the trial court did not err "in according [the mother] and her successors in interest credit for full physical responsibility . . . under the guideline formula" where they "had full responsibility for [the child]'s physical situation and care" and the father had "no physical responsibility." (*Ibid.*)

In distinguishing *Drake*, the *Edwards* court explained as follows: "The fact [the mother] receives mail for [the child] at her address, that he keeps some of his 'stuff' at her home, and that he visits her from time to time, do not support the trial court's finding that [the mother] has 'primary physical responsibility' [citation] for [the child] for any percentage of time. In this fact situation, neither parent retains 'primary physical responsibility' of their adult son for any period of time. Accordingly, the guideline formula, by its terms, is inapplicable. Stated another way, application of the guideline formula 'would be unjust or inappropriate' due to the particular circumstances of this case."[8] (*Edwards*, 162 Cal.App.4th at p. 144.) Relying on *Edwards*, father contends that once Jennifer turned 18, because she was an adult and because she was at boarding school neither he nor stepfather had "primary physical responsibility" for her for any period of time. Thus, according to father, "[t]he [trial] court's decision to maintain the previous guideline support order when timeshare could no longer be calculated for an adult child was legal error." Father does not mention *Drake*.

■ As father himself acknowledges, by statute a parent's duty of support "continues as to an unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first." (§ 3901, subd. (a).) If, however, as father contends, a child turning 18 automatically renders the formula for guideline child support inapplicable because neither parent (or any other custodian) has "primary physical responsibility" for a child who is no longer a minor, then there would be no way to enforce the duty to support an adult child imposed by section 3901 by means of a guideline child support order. We do not believe the Legislature intended such a result. Instead, consistent with the decision in *Drake* (*and* with the decision in *Edwards*), we conclude that it is neither

---

[8] The amount of child support established by the guideline formula "is presumed to be the correct amount of child support to be ordered" (§ 4057, subd. (a)), but that presumption may be rebutted by evidence showing that "[a]pplication of the formula would be unjust or inappropriate due to special circumstances in the particular case" (*id.*, subd. (b)(5)).

unjust nor inappropriate to apply the guideline child support formula to a child, like Jennifer, who has turned 18 but is still a full-time high school student. Stated another way, the mere fact that a supported child who is a full-time high school student turns 18 does not constitute a change of circumstances that renders the guideline inapplicable. As long as, based on the facts of the case, it is possible to reasonably assign physical "responsibility" for an adult child, the guideline formula remains applicable, even though neither parent (or any other person) has "custody" of the child.

In *Drake*, the court determined it was possible to reasonably assign physical responsibility for the disabled adult child to the mother, despite the fact that the child did not live with her. In *Edwards*, by contrast, the court determined it was not possible to reasonably assign physical responsibility to either parent for the adult child there because he was living on his own at college, on a full financial aid package, and the most mother could claim in terms of "responsibility" was that she received mail for him at her address, he kept some of his "stuff" at her home, and he visited her from time to time.

Here, it is true that Jennifer, like the adult child in *Edwards*, was no longer living in stepfather's home when father sought to modify his support obligation to zero. But unlike the child in *Edwards*, Jennifer was not living on her own at college. Instead, she was finishing high school at a boarding school. In *In re Marriage of Katzberg* (2001) 88 Cal.App.4th 974 [106 Cal.Rptr.2d 157], this court concluded that a trial court did not abuse its discretion in imputing a minor child's time at boarding school to the father, who had been deemed the child's primary caretaker and with whom the child had primarily lived before he went to boarding school. (*Id.* at p. 982.) This court agreed "that the allocation of time depends on the 'practical reality of day-to-day responsibility for a child' [citation], and father here has assumed those responsibilities, not mother." (*Id.* at p. 983.)

On the record here, it was likewise not an abuse of discretion for the trial court to conclude that Jennifer's attendance at boarding school did not change the fact that stepfather was "responsible" for her 100 percent of the time for purposes of calculating guideline child support. The evidence showed stepfather was responsible for enrolling Jennifer in boarding school, he maintained frequent and continuing contact with her and her counselors while she was away, he visited with her and she visited with him, and she intended to return home to live with him upon graduating.

Based on these facts, stepfather was undoubtedly "responsible" for Jennifer during her time at the boarding school while she was a minor, from her enrollment in August 2007 until she turned 18 in August 2008. More importantly, though, we conclude the trial court was not obliged to alter its

view of stepfather's responsibility just because Jennifer turned 18. If there were evidence that the "practical reality" of stepfather's relationship with Jennifer during her attendance at boarding school changed because she turned 18, then there might have been a basis for the trial court to revisit the question of whether stepfather still had "primary physical responsibility" for the child 100 percent of the time. There was no such evidence here, however, and absent such evidence, we conclude the trial court did not err in refusing to reduce father's child support obligation to zero.

## DISPOSITION

The judgment (order) of the trial court is affirmed. Stepfather shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Scotland, P. J., and Sims, J., concurred.