Filed 9/28/20 In re I.C. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| In re I.C., a Person Coming Under the Juvenile Court Law. | B302694 (Los Angeles County Super. Ct. No. 19CCJP06090A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LUCY M., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Steven Marpet, Commissioner. Affirmed.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, Stephanie Jo Reagan, Principal Deputy County Counsel for Plaintiff and Respondent.

Appellant Lucy M. is the mother of daughter I.C., born in 2002. I.C.'s father is J.C. (father).[1] The juvenile court found I.C. to be a person described under Welfare and Institutions Code section 300, subdivision (b),[2] removed I.C. from Lucy's custody and placed her with father. On appeal, Lucy argues substantial evidence supports neither the jurisdictional nor dispositional orders. We disagree; substantial evidence supports both orders. Additionally, given that I.C. turned 18 years of age over the course of this appeal, the question whether the court erred in removing I.C. from Lucy's custody is now moot. Although the juvenile court may retain jurisdiction over nonminor children until they are 21 years old, parents can no longer have "custody" of adults. Accordingly, we affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Juvenile Court Proceedings

The Department of Children and Family Services (Department) filed a dependency petition on September 18, 2019 alleging two counts under section 300, subdivision (b). First, the petition alleged Lucy's history of drug use, convictions for drug possession and driving under the influence, and current use of methamphetamine "renders [Lucy] incapable of providing regular care for [I.C.]."[3] Second, the petition alleged Lucy established "a detrimental and endangering home environment for [I.C.] in that

---

[1]     Father is not a party to this appeal.

[2]     Statutory references are to the Welfare and Institutions Code.

[3]     The petition also alleged father knew or reasonably should have known of Lucy's substance abuse and failed to protect I.C.

a loaded gun and ammunition were found" inside the home and accessible to I.C. "Such a detrimental and endangering home environment . . . endangers [I.C.'s] physical health and safety, and places [her] at risk of serious physical harm, damage and danger."

At the detention hearing, I.C. was ordered detained from Lucy and placed with father, who was separated from Lucy and no longer living with her and I.C. The juvenile court ordered monitored visitation for Lucy until she produced two consecutive negative drug tests.

At the jurisdictional hearing, the juvenile court admitted into evidence (1) the detention report, (2) the jurisdiction/disposition report, (3) a last-minute report, and (4) criminal case dockets, showing Lucy's prior felony and misdemeanor convictions and a probation violation.

Following argument by counsel, the court sustained the petition's allegations against Lucy.[4]

The juvenile court proceeded with the dispositional hearing and found I.C. was a person described by section 300, subdivision (b) and declared her a dependent child. The court also ordered I.C. to remain released to father with monitored visitation by Lucy, and family maintenance services and case plans for both parents.

Mother timely appealed.

**B.  Evidence at the Jurisdictional and Dispositional Hearing**

**1.  Lucy's Prior Referral and Criminal History**

---

[4]  The court granted father's motion to strike the allegation against him, making him a non-offending parent.

In April 2010, the Department received a referral regarding Lucy's general neglect of I.C. Lucy reportedly drove I.C. while under the influence of alcohol several times each week. Both Lucy and I.C. denied the allegations, which were ultimately deemed unfounded.

Lucy has the following criminal history. In 2011, she was convicted of misdemeanor battery. In 2014, Lucy was arrested and later convicted of driving under the influence of alcohol after she struck two parked cars and displayed objective symptoms of alcohol intoxication.[5] Following a traffic stop in 2018, Lucy admitted to the officers that her license was suspended. At some point, she said her purse contained methamphetamine, which she sold to support herself. The officers recovered three small bags of methamphetamine and arrested Lucy. She was convicted by plea in January 2019 of possession for sale of a controlled substance.

Lucy's subsequent arrest on May 15, 2019 prompted the filing of the dependency petition in this case. On that day, sheriff's deputies initiated a traffic stop of Lucy when her failure to stop at a stop sign and unsafe lane change caused several drivers to take evasive action to avoid a collision. I.C. was in the car, and Lucy explained to the deputies she was rushing to take her daughter to school. Lucy acknowledged she was on probation for a drug offense, which the deputies confirmed with the probation department. Lucy also said she had some methamphetamine in her purse.

---

[5] Although not entirely clear, the record suggests Lucy has more than one prior driving under the influence conviction.

A search of Lucy's purse yielded a small bag of methamphetamine. Upon further questioning,[6] Lucy told the deputies she had the drug because she planned to "hang out" with friends after dropping off I.C., and she typically used methamphetamine two to three times a week. Lucy also confirmed her residence address, saying she had lived there for three years with her "boyfriend" Paul and I.C. When asked "if there was anything illegal" at her home, Lucy replied there was a gun under her bedroom mattress, possibly some ammunition in her closet, and methamphetamine on the dresser next to her bed. Lucy said she shared the bedroom with Paul and the gun belonged to him.

Deputies then searched Lucy's residence and recovered a semiautomatic handgun apparently from under the mattress of her bedroom and a box of ammunition from her bedroom closet. Lucy was taken into custody for possession of a firearm by a felon, unlawful possession of a controlled substance, and possession of a controlled substance. In July 2019, Lucy pleaded no contest to possession of a controlled substance and the remaining counts were dismissed pursuant to a negotiated agreement.

2. **The Department's Interviews with the Family**
   a. **I.C.'s Interview**

---

[6] After the methamphetamine was found, but before being questioned, Lucy was advised of her right to remain silent, to the presence of an attorney, and, if indigent, to appointed counsel. (*Miranda v. Ariz.* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].)

During interviews with a Department social worker in August and October 2019, I.C. denied Lucy ever possessed or used drugs. I.C. said any drugs found in her mother's possession were Paul's. She could smell the drugs that Paul used in his bedroom. She and her mother shared a separate bedroom, and Paul had his own bedroom.

I.C. said her mother was driving her to school on May 15, 2019, when the deputies stopped Lucy "for no reason." I.C insisted the deputies lied when they said Lucy had drugs. She claimed the drugs and gun found in the home belonged to Paul. I.C. knew Paul had a gun, because he told her. She neither saw the gun nor had access to it; Paul stored the gun under his mattress. I.C. also said Paul told the authorities that the recovered gun and drugs belonged to him, and "all charges against [Lucy] were dropped." (As noted, Lucy entered a negotiated no contest plea in July 2019 to possession of a controlled substance as a result of the May 15, 2019 arrest.) I.C. knew Lucy was on probation, but she did not know the reason. I.C. preferred to live with Lucy. Because she was 17 years old, I.C. believed she should not have been removed from her mother's custody.

### b. Lucy's Interview

During interviews with Department social workers in August and October 2019, Lucy denied having a drug problem or possessing or using any drugs, including methamphetamine. Lucy acknowledged she had experimented with some drugs, but only prior to I.C.'s birth.

Lucy reported she was "fighting" her April 10, 2018 arrest for possession for sale of a controlled substance (to which she

pleaded no contest in January 2019), because she did not have any drugs and was "target[ed]" by the police.

Regarding her most recent arrest on May 15, 2019, Lucy said she knew she should not have been driving, but the deputies pulled her over "for no reason" and falsely accused her of having methamphetamine and a gun. Lucy claimed the deputies "were out to get [her,]" lied about her, and ripped her daughter's backpack while searching for drugs; and she was in the process of preparing a lawsuit against the sheriff's department. Lucy also said she knew the deputies were acting on "a tip" from her "roommate Paul" that she was carrying "a pound of meth" in her car. Lucy also blamed father, claiming he had "set her up and has gotten her in[to] trouble on purpose because he just wants to mess with her."

As for the loaded gun located in her home, Lucy said she was "in shock when [deputies] found the gun!" She said the gun belonged to Paul and was found in his bedroom. Lucy acknowledged her probation conditions prohibited her from being around firearms but insisted she knew nothing about the gun. When told her daughter knew about the gun, Lucy said she did not know how I.C. had become aware of it. Lucy said the gun was registered to Paul, and because he admitted to the authorities that gun and drugs belonged to him, she was released from jail.

During the August 2019 interview, Lucy informed the social worker that she and I.C. had to vacate the home. But Lucy did not know where they would be living or when they had to move out.[7] She agreed to provide the Department with her new

---

[7] Lucy's notice of appeal, filed December 2, 2019, indicated her original address.

7

address. Lucy had been renting a room from Paul, and the two of them did not communicate much. During the October 2019 interview, she denied being in a romantic relationship with him.

### 3. The Roommate Paul

Paul was never interviewed by the Department.

In August 2019, the Department social worker twice attempted to meet with Lucy at her address. On the second occasion, a man answered the front door, refused to identify himself, and said Lucy and I.C. were not home. When the social worker told him the reason for her visit, the man denied any child abuse and said he was a registered gun owner and his gun was kept in a safe and could not be accessed by Lucy or her daughter.

In August 2019, I.C. told a Department social worker that Paul was verbally abusive. He would sometimes yell at Lucy and call her a "whore or a slut," and law enforcement had responded to the home because of his "'crazy' behavior." Paul was taken into custody, but was soon released. I.C. also said when Lucy left her alone on occasion, Paul would "act crazy." A year earlier, he broke her bedroom door and "trashed" her bedroom. When I.C. reported Paul's behavior to Lucy, she told him to stop. I.C. said Paul had not physically or sexually abused her, adding she felt safe with Lucy, but not with Paul.

### 4. Last Minute Information

Lucy was ordered by the juvenile court to submit to random drug testing and, if two consecutive tests were negative, she would be allowed unmonitored visits with I.C. On November 22,

2019, the Department submitted a last minute information for the December 2, 2019 jurisdictional hearing stating that Lucy had failed to show for any scheduled drug test. Nor had she visited I.C. Lucy's only contact with her daughter was by phone.

## DISCUSSION

### A.    Standard of Review

Lucy contends the juvenile court erred in finding that I.C. is a person described by section 300, subdivision (b). "On appeal from an order making jurisdictional findings, we must uphold the court's findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings. [Citation.] Substantial evidence is evidence that is reasonable, credible, and of solid value. [Citation.]" (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) Any inferences we draw must be reasonable and logical; "'inferences that are the result of mere speculation or conjecture cannot support a finding [citations].' [Citation.]" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394, italics omitted.)

### B.    Section 300, subdivision (b)

For a court to find a child is one who is described by section 300, subdivision (b), the Department must establish "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of

9

the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." (§ 300, subd. (b)(1).)

There is no evidence in the record that I.C. suffered any serious physical harm or illness. In the absence of any evidence of past harm suffered by I.C., we examine whether the Department has shown by a preponderance of the evidence there is a "substantial risk that the child will suffer serious physical harm or illness." (§ 300, subd. (b)(1).) Our focus is whether the Department produced substantial evidence that "at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future." (*In re Savannah M., supra,* 131 Cal.App.4th at p. 1396-1397.) The purpose of the section "'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm.*' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

## C.    Accessibility of a Loaded Gun in the Home

Here, the juvenile court properly sustained jurisdiction under section 300, subdivision (b) because the Department produced sufficient evidence that a detrimental and endangering

home environment placed I.C. at substantial risk of serious physical harm based on the accessibility of a loaded gun and ammunition inside the home.

*In re Yolanda L.* (2017) 7 Cal.App.5th 987 (*Yolanda L.*) is instructive. In a case of first impression, our colleagues in Division Eight upheld dependency court jurisdiction, concluding the children, aged four years and six months, were at risk under section 300, subdivision (b) because the father kept a loaded accessible firearm inside the family home. (*Yolanda L.*, *supra*, 7 Cal.App.5th at pp. 993, 995-996.) The father was the subject of a law enforcement narcotics investigation and was arrested for transporting methamphetamine inside his truck. (*Id.* at pp. 989-990.) He told the arresting officers there was a gun inside a bag in a hall closet of the home. (*Id.* at p. 990.) During a search of the home, the officers found a cloth bag inside a hall closet. The bag contained a loaded semiautomatic handgun and ammunition and was on a shelf that was accessible to the four-year-old child. (*Ibid.*) The Court of Appeal determined "dependency jurisdiction may be based on evidence that the parent stored a loaded gun in such a manner that it could be accessed by a child." (*Id.* at p. 995.)

We agree with Lucy that, unlike the children in *Yolanda L.*, I.C. was "not a child of tender years." Although this case does not involve young children, it does involve improper firearm storage, the circumstances of which are no less concerning than those of *Yolanda L.* According to I.C., Paul could be hostile and belligerent. He behaved violently toward I.C. when they were alone and was verbally abusive of Lucy. On one occasion, he was taken into police custody. I.C. told the Department social worker she did not feel safe at home with Paul. The danger to I.C. posed

11

by Paul's easy access to a loaded gun, whether the weapon was hidden under his or Lucy's mattress, was exacerbated by his violent behavior. Should Paul engage in similar behavior in the future—directed against I.C. or Lucy while in possession of a loaded gun—there is a substantial risk I.C. could become an intentional or accidental victim of serious or even deadly harm.

Furthermore, here, as in *Yolanda L.*, Lucy's "lack of insight into the danger posed by the loaded gun in the home provided support for the potential of future risk. [Citation.]" (*Yolanda L., supra*, 7 Cal.App.5th at p. 996.) Lucy did not demand that Paul dispose of the gun or have it locked away. She repeatedly lied to the Department about her knowledge of the gun and refused to accept she had done anything wrong, even though she acknowledged the conditions of her probation prohibited her from being around guns. Instead, Lucy expressed "shock" to the social worker that a gun had been found in her home and claimed she had no knowledge of it at all. Yet, officers found the gun under the mattress as Lucy had reported to the police on May 15, 2019, when she was detained. Moreover, while her daughter did not feel safe with Paul and informed her of his violent behavior, Lucy merely told him to "stop." She did not move out of the home, even though she told the social worker that she and her daughter were being forced to leave. Lucy was still residing in the home, and presumably with Paul, at the time of the jurisdictional hearing. Lucy's steadfast denial of any wrongdoing and refusal to take responsibility for her conduct that led to I.C.'s removal amply supported the finding that Lucy's conduct placed I.C. at substantial risk of harm. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge."])

This case is unlike *In re D.L.* (2018) 22 Cal.App.5th 1142, in which our colleagues in Division One concluded although the father had stored a loaded gun in his child's room, circumstances at the time of the jurisdictional hearing established there was no risk of future physical harm to the child. (*Id.* at pp. 144-145, 147.) Specifically, the father no longer lived with the family, the mother, who had been unaware of the gun, no longer allowed him into her home, and the father ensured the child would no longer have access to the gun. (*Id.* at p. 147.) In short, unlike Lucy, the parents not only acknowledged their dangerous conduct, but also took steps to prevent a risk of harm to their child from such conduct.

## D. Lucy's Current and Prior Drug Use

The juvenile court also asserted jurisdiction after finding Lucy's current or prior drug use rendered her incapable of providing regular care for I.C. Lucy challenges the sufficiency of the evidence to support this finding. We need not, however, consider this contention, having concluded substantial evidence supports the finding that a detrimental and endangering home environment placed I.C. at substantial risk of serious physical harm based on the accessibility of a loaded gun and ammunition inside the home. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged

statutory grounds for jurisdiction are supported by the evidence. [Citations.]"].)

### E.    Dispositional Order

Lucy next argues the evidence was insufficient to support the juvenile court's dispositional order removing I.C. from her custody. She also maintains there were reasonable means that I.C.'s physical health could be protected without removal. For example, Lucy's case plan could have included a home inspection to ensure any gun was locked in Paul's safe to obviate the perceived danger to I.C.

Section 361, subdivision (c)(1) provides a court may not remove a child from a parent's custody absent clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody. . . ." Substantial evidence supports the court's conclusion that "[t]here is or would be a substantial danger to the physical health, safety, protection or physical or emotional well-being of [I.C.] if [she] were returned home" and that no services are available to prevent removal. (*Ibid.*)

As discussed above, it was not just the accessibility of the gun that put I.C. at risk, it was also Paul's disturbing behavior. I.C. did not feel safe in the home with Paul, with whom she and Lucy still resided. Even if it would encourage Paul to lock away his gun, a home inspection would not address his violent behavior.

14

Additionally, we note since briefing in this matter was completed, the argument has become moot. I.C. turned 18 years of age on August 26, 2020, and thus cannot be returned to Lucy's custody. "[T]he statutory framework does not allow a parent to reunify with a dependent child who has turned 18 because a parent cannot have physical custody of an adult." (*In re K.L.* (2012) 210 Cal.App.4th 632, 640.) While "[t]he court may retain jurisdiction over any person who is found to be a ward or a dependent child of the juvenile court until the ward or dependent child attains 21 years of age" (§ 303, subd. (a)), "[n]othing in this code . . . shall be construed to . . . abrogate any other rights that a person who has attained 18 years of age may have as an adult under California law" (*id.*, subd. (d)(1)). "An adult . . . is not in the custody of either parent." (*Edwards v. Edwards* (2008) 162 Cal.App.4th 136, 143.) Accordingly, whether the dispositional order removing I.C from Lucy's custody was erroneous is moot. (See *In re David B.* (2017) 12 Cal.App.5th 633, 644 ["'[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.' [Citation.]"].)

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.