[No. C055005. Third Dist. Mar. 26, 2008.]

PLUMAS COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,
Plaintiff and Appellant, v.
AME R. RODRIQUEZ, Defendant and Respondent.

1022

---

---

## COUNSEL

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Paul Reynaga and Sharon Quinn, Deputy Attorneys General, for Plaintiff and Appellant.

W. Wayne Yates, Jr., for Defendant and Respondent.

---

## OPINION

**ROBIE, J.**—The Plumas County Department of Child Support Services (county) appeals from an order dismissing its complaint against Ame R. Rodriquez, by which it sought to compel Rodriquez to pay support for her 18-year-old son Joshua who, after living with Rodriquez nearly all of his life, began living with Rodriquez's brother and sister-in-law (the Andersens) full time while he finished his senior year in high school.

The trial court found that Rodriquez—who had been designated her son's custodial parent in a 1993 child support order—had no legal obligation as a custodial parent to pay child support. The court also found that, absent a contractual agreement between Rodriquez and the Andersens for Joshua's

support, the Andersens could not request the county's assistance in obtaining a judgment for support against Rodriquez.

The complaint was properly dismissed. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute.

When Rodriquez and Dean Duchi dissolved their marriage in 1993, the court entered an order designating Rodriquez the primary custodial parent, and ordering Duchi to pay child support of $565 per month. That order was never revoked or modified.

Joshua lived with his mother until 2005, when he moved to Arroyo Grande and began living with Rodriquez's brother and sister-in-law, the Andersens. Rodriquez, Duchi, Joshua, and the Andersens all agreed that Joshua would continue to live with the Andersens until he completed high school in June 2007.

Duchi continued to make his court-ordered monthly child support to Rodriquez, which she forwarded to the Andersens. For a time, Rodriquez also sent the Andersens $165 a month toward Joshua's living expenses and sometimes sent him gift cards for fast food.

In or about August 2006, Rodriquez stopped sending support above and beyond that provided by Duchi. The Andersens then applied to the county for help, explaining that Joshua was living with them "by mutual agreement." The county promptly initiated this action, in which it sought to compel Rodriquez to pay $576 per month in child support for Joshua. The computer formula used by the county to calculate Rodriquez's support obligation assumed the Andersens were Joshua's custodial parents and Rodriquez his "noncustodial" parent; it assumed no support from Duchi. Nothing in the county's complaint suggests Joshua is receiving public assistance.

In her answer to the complaint, Rodriquez objected to the amount of the proposed support demand on the grounds the request failed to account for Duchi's continued payments and overstated her income.

After a trial at which Rodriquez and a county representative testified, the court found that "the complaint cannot be substantiated" and dismissed the action. Its "Ruling on Child Support" (which it incorporated into the order) first rejected the complaint's characterization of Rodriquez as the "noncustodial parent" as follows: "As shown by the underlying dissolution of marriage

action, [Rodriquez] is, and has always been the *primary custodial parent* of Joshua. As such, she has no obligation to pay money for the support of a child in her custody. [The Andersens] are not parties to this action and therefore they have no standing to request the [county]'s assistance in obtaining a judgment for Joshua's support against [Rodriquez]. Although [Rodriquez] has been voluntarily sending money each month, she is under no obligation to do so short of a contractual agreement with the Andersens and there has been no such evidence . . . ."

Indeed, the court explained, the facts of this case are analogous to a situation in which Rodriquez "decided to place Joshua in a boarding or military type school for his education. As the primary custodial parent, she would have a right to place him where she felt necessary and appropriate. Assuming the amount of child support paid by [Duchi] was insufficient to meet the financial needs of the school, [Rodriquez] would be required to [enter] into an agreement to pay the difference. This in no way would alter the fact that she still doesn't have an obligation under the Family code to *pay* child support as a *non-custodial parent*."

The county appeals. We shall affirm.

## DISCUSSION

### I

### *Standard of Review*

We review orders granting or denying a request for modification of a child support order for abuse of discretion. (*Brothers v. Kern* (2007) 154 Cal.App.4th 126, 133 [64 Cal.Rptr.3d 239]; *In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1371 [40 Cal.Rptr.3d 910].) The trial court's exercise of its discretion must be "informed and considered" (*In re Marriage of Muldrow* (1976) 61 Cal.App.3d 327, 332 [132 Cal.Rptr. 48]; see *In re Marriage of Pearlstein*, at p. 1371), and the trial court may not "ignore or contravene the purposes of the law" (*County of Stanislaus v. Gibbs* (1997) 59 Cal.App.4th 1417, 1425 [69 Cal.Rptr.2d 819]).

To the extent the appellant challenges the trial court's factual findings, we review the findings for substantial evidence, considering the evidence in the light most favorable to the party who prevailed in the trial court. (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151 [62 Cal.Rptr.2d 466].)

"However, ' "questions relating to the interpretation of statutes are matters of law for the reviewing court. [Citation.]" ' [Citation.] Thus, when a trial

court's ruling turns on the interpretation of a statute, the issue is one of law, subject to the independent review of this court. [Citation.]" (*County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1316 [93 Cal.Rptr.2d 524].)

The county contends in this appeal that once Joshua has ceased to live with her, Rodriquez has a statutory duty to support Joshua, which is not discharged by the 1993 dissolution decree granting her physical custody of him. It also contends the trial court erred in dismissing the action based on the Andersens' alleged lack of standing to compel Rodriquez to meet her support obligation because the county has independent legal authority to bring an action to establish a support order on Joshua's behalf.

## II

### *To a Point, the County's Assertions Are Correct*

■ First, Rodriquez *does* have a statutory duty to support Joshua. The Family Code provides that both parents "have an equal responsibility to support their child in the manner suitable to the child's circumstances" (Fam. Code, § 3900) and that duty "continues as to an unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first" (*id.*, § 3901, subd. (a)).

■ Second, nor does the existence of a prior dissolution decree granting Rodriquez custodial status necessarily define her subsequent support obligation. (See *County of Ventura v. George* (1983) 149 Cal.App.3d 1012, 1016–1018 [197 Cal.Rptr. 245].) "[A] parent's obligation to provide financial support for his or her children transcends certain technical interpretations of custody . . . ." (*Id.* at pp. 1018–1019.) Rather, the concept of custodial parenthood should be interpreted in the context within which it is considered; for example, courts considering support orders to recoup public assistance "look beyond the form of the language contained in the decree of dissolution and instead focus[] on the actual relationship of financial support which existed between parent and child." (*Id.* at p. 1016 [rejecting reasoning in "cases, as in the present litigation, [wherein] a parent sought to avoid his or her responsibility to provide support by hiding behind the provisions of a decree terminating the marriage"].)

■ Third, we also agree that the county is empowered by the Family Code to establish, as well as enforce, a child support order (Fam. Code, § 17400, subd. (a)), and it may do so "if requested . . . on behalf of a child who is *not* receiving public assistance, including Medi-Cal." (*Ibid.*, italics added; see *id.*, § 17400, subd. (h)(3).)

### III

### *An Agreement Is Necessary for Enforcement*

 But nothing in the statutes permitting the county to establish or enforce child support orders suggests that third party, nonparent family members such as the Andersens may enlist the local child support agency to prosecute an action to collect child support on their behalf. Rather, the statutes provide that an action to establish child support "may be prosecuted in the name of the county on behalf of the child, children, or a parent of the child or children" (Fam. Code, § 17404, subd. (a)), and that such an action to establish child support shall be taken by or on behalf of "[t]he parent who has requested or is receiving support enforcement services" (Fam. Code, § 17404, subd. (a); see, e.g., Fam. Code, §§ 17404, subds. (e)(4), (f)(1), (2), 17406, subd. (f)(1)(B)). The Andersens are not "the child, children, or a parent of the child or children."

 Indeed, an applicable Family Code section ignored by the parties shows the Legislature did not intend to assist nonparent family members in collecting child support, absent evidence of an express agreement for compensation by the parent. Family Code section 3951, subdivision (a) states that "[a] parent is not bound to compensate the other parent, *or a relative*, for the voluntary support of the parent's child, without an agreement for compensation." (Italics added.) This section, and its predecessor (Civ. Code, former § 208), have long been interpreted to deny compensation in intrafamily support arrangements of the type at issue here, unless the parties have an express agreement for support. For example, in *Crane v. Livingston* (1950) 98 Cal.App.2d 699 [220 P.2d 744], when a divorced mother who had been granted sole custody of her children became ill, her sister took custody of the children, and raised them to adulthood. The aunt sought to recover sums for their support from the father, but the court dismissed her complaint. (*Id.* at pp. 700–703.) Notwithstanding the father's acknowledged general obligation to support his children, the court held that the statute barred the aunt's recovery of sums she voluntarily spent to support his children. (*Id.* at pp. 701–702; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2004) ¶ 6:42, p. 6-33 (rev. #1, 2007).)

In a petition for rehearing, the county argues that we should interpret the word "compensate" in Family Code section 3951, subdivision (a) narrowly, as referring to reimbursement for past expenses only, and hold that the statute "does not prohibit the adjudication of a request for the establishment of a

*prospective* child support order," such as the one at issue here.[1] The county contends this construction of the statute is necessary because the statute applies not only to support provided by "a relative," but also to support provided by "the other parent." In the county's view, if "the word 'compensate' in this statute" is interpreted "to prohibit a request to establish *prospective* child support," then "a custodial parent voluntarily supporting that parent's child would not be able to establish a court order for *prospective* child support against the non-custodial parent without the non-custodial parent's agreement. Such an interpretation would effectively bar the local child support agencies from establishing an order for *prospective* child support against the non-custodial parent in the majority of their cases."

We are unpersuaded. If Family Code section 3951, subdivision (a) were construed as barring only reimbursement for *past* support, the statute would be superfluous, because Family Code section 4009 already bars such reimbursement by limiting the retroactivity of child support orders.[2] Generally, "we must strive to . . . avoid interpretations which render statutory language superfluous." (*Mundy v. Superior Court* (1995) 31 Cal.App.4th 1396, 1405 [37 Cal.Rptr.2d 568].) Thus, the rules of statutory interpretation support the conclusion that the application of Family Code section 3951 does not depend on when the support was (or will be) provided.

Furthermore, the county's concern that our interpretation of the statute will "effectively bar the local child support agencies from establishing an order for *prospective* child support against the non-custodial parent in the majority of their cases" is unwarranted. This is so because Family Code section 3951, subdivision (a) applies only to "voluntary" support. The

---

[1] The county insists we are bound to grant its petition for rehearing under Government Code section 68081 because "[s]ection 3951 was never raised as a defense by [Rodriquez] during trial, was not expressly cited nor discussed by the trial court in the ruling challenged on appeal, and was not proposed, argued, or briefed by either party on appeal." The county is mistaken. Government Code section 68081 applies only where a decision is "based upon *an issue* which was not proposed or briefed by any party to the proceeding." (Gov. Code, § 68081, italics added.) The *issue* in this case was whether the trial court erred in ruling that Rodriquez was not obliged to pay child support to her brother and sister-in-law, and Family Code section 3951 is simply a statute that bears on that issue. Government Code section 68081 does not require us to give the parties the opportunity to brief every statute (or other authority) that we may apply in deciding the issues in their case, so long as the parties have had the opportunity to brief the issues themselves. (See *People v. Alice* (2007) 41 Cal.4th 668, 677 [61 Cal.Rptr.3d 648, 161 P.3d 163] ["Section 68081 does not require that a party actually have briefed an issue; it requires only that the party had the opportunity to do so."].) Accordingly, we address the county's argument regarding Family Code section 3951 by modifying our opinion but denying the petition for rehearing.

[2] "An original order for child support may be made retroactive to the date of filing the petition, complaint, or other initial pleading. If the parent ordered to pay support was not served with the petition, complaint, or other initial pleading within 90 days after filing and the court finds that the parent was not intentionally evading service, the child support order shall be effective no earlier than the date of service." (Fam. Code, § 4009.)

county's concern rests on the belief that a custodial parent who seeks an order for child support from the noncustodial parent—whether in a paternity (or maternity) action or a marital dissolution proceeding—must be treated as a parent seeking "compensat[ion] . . . for the voluntary support of the . . . child" within the meaning of section 3951, subdivision (a). Not so. Under California law, "the father and mother of a minor child have an equal responsibility to support their child in the manner suitable to the child's circumstances." (Fam. Code, § 3900.) Given that it is the legal duty of both parents to support their child, support provided by a custodial parent in actually housing, feeding, and caring for the child—even in the absence of a court order—cannot be deemed "voluntary."[3] Accordingly, when a custodial parent seeks a child support order against the noncustodial parent, the custodial parent is not seeking compensation for the "voluntary support" of the child within the meaning of Family Code section 3951, subdivision (a). (See *Richter v. Houser* (N.D. 1999) 598 N.W.2d 193, 197–198 [holding that an identical statute did "not prohibit the parent from collecting, on the child's behalf, support money the other parent has a legal obligation to provide for the child"].)

■ Properly understood, then, Family Code section 3951, subdivision (a) bars a parent or relative from seeking compensation from the other parent for "voluntary support" of the child, absent an agreement for compensation, and this bar applies to prospective child support orders as well as to claims for reimbursement. The operative fact is not whether the support at issue was provided in the past or will be provided in the future, but whether the support at issue is (or will be) "voluntary." Where, as here, the parent or relative seeking compensation from the other parent has no legal duty to support the child, the support at issue is "voluntary" within the meaning of the statute.

Here, the trial court correctly found that the Andersens had no right to recover child support for Joshua from Rodriquez absent an agreement to that effect, and that there was no evidence of any such agreement. Substantial evidence supports the court's implicit finding that, while the Andersens are not actually parties to the action, they nonetheless effectively initiated the enforcement action by "request[ing] the [county's] assistance in obtaining a judgment for Joshua's support against" Rodriquez. Joshua was not receiving public assistance; only after Rodriquez indicated to the Andersens that she would no longer be able to contribute $165 per month to Joshua's support did the Andersens seek the county's assistance in bringing this lawsuit.

---

[3] Given the general duty of both parents to support their child (Fam. Code, § 3900), it might be argued that support provided by a parent is never "voluntary." However, where a noncustodial parent has been ordered to pay a certain amount of child support and voluntarily chooses to pay more, the additional amount could rightfully be characterized as voluntary. In such a case, Family Code section 3951, subdivision (a) would bar the noncustodial parent from seeking compensation for the overpayments from the custodial parent.

Moreover, substantial evidence supports the court's finding that the Andersens had no agreement with Rodriquez regarding Joshua's support. There was testimony that Rodriquez, Joshua and the Andersens "mutually agreed" that Joshua would live with the Andersens until he finished high school in June 2007, but no evidence that this agreement involved any independent support from Rodriquez. Indeed, everyone agreed that when Rodriquez sent the Andersens $165 per month in addition to the support Joshua received from his father, she did so "voluntarily."

The county insists its action on behalf of the Andersens was justified by Family Code section 7641, subdivision (a), a provision of the Uniform Parentage Act (Fam. Code, § 7600 et seq.), which states that "If existence of the father and child relationship is declared, or paternity or a duty of support has been acknowledged or adjudicated under this part or under prior law, the obligation of the father may be enforced in the same or other proceedings by any of the following: [¶] (1) The mother. [¶] (2) The child. [¶] (3) The public authority that has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, support, or funeral. [¶] (4) Any other person, including a private agency, to the extent the person has furnished or is furnishing these expenses." Insofar as practicable, the rules set forth in the Uniform Parentage Act (Fam. Code, § 7600 et seq.) pertaining to paternity actions apply equally to maternity actions. (*Amy G. v. M.W.* (2006) 142 Cal.App.4th 1, 10, 12–14 [47 Cal.Rptr.3d 297] [presumptions of paternity largely inapplicable in case by father and father's wife against biological mother to establish that father's wife is in fact child's mother].)

■ And, by the plain language of subdivision (a) of Family Code section 7641, no support obligation can be enforced which has not "been acknowledged or adjudicated under this part or under prior law." Neither part of that predicate is satisfied here. No support obligation has been "acknowledged" by Rodriquez because, as the trial court found, she never had any agreement with the Andersens to support Joshua while he lived with them. Nor can an obligation by Rodriquez to support Joshua while in the Andersens' care be "adjudicated" in their favor in this proceeding, because under Family Code section 3951, she cannot be bound to compensate relatives who have voluntarily provided support for the parent's child without an agreement for compensation, i.e., the Andersens, and no other order exists requiring Rodriquez to provide for Joshua's care.

In sum, the trial court did not abuse its discretion in concluding that this action represented an attempt by the Andersens to recover support from Rodriquez for Joshua, and that there was no agreement between Rodriquez and the Andersens for Joshua's support. It was not error to dismiss the complaint. (See *Crane v. Livingston, supra,* 98 Cal.App.2d at pp. 702–703.)

## DISPOSITION

The judgment is affirmed. Rodriquez shall receive her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Sims, Acting P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied April 22, 2008, and the opinion was modified to read as printed above.