Filed 3/27/13  Marriage of Jayaratne CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of CHAMINDA and SUDHARSHI JAYARATNE. | B240485 |
| CHAMINDA JAYARATNE, | (Los Angeles County Super. Ct. No. KD079905) |
| Appellant, | |
| v. | |
| SUDHARSHI JAYARATNE, | |
| Respondent. | |

       APPEAL from an order of the Superior Court of Los Angeles County, Susan Lopez-Giss, Judge.  Affirmed.

       Chaminda Jayaratne, in pro. per.; and Gregory T. Annigian for Appellant.

       No appearance for Respondent.

# INTRODUCTION

In this marital dissolution action, Chaminda Jayaratne appeals from the trial court's denial of his order to show cause (OSC) to modify the amount of child and spousal support he was ordered to pay to his wife Sudharshi Jayaratne. He contends the court erroneously found that there was no significant change of circumstances to justify modification without allowing him to introduce any evidence. We disagree and affirm the order denying the OSC.

## FACTUAL AND PROCEDURAL BACKGROUND

Chaminda Jayaratne filed a petition for dissolution of his marriage to Sudharshi Jayaratne on September 15, 2010.[1] He served the petition on Sudharshi on October 13, 2010.

## I. Sudharshi's OSC and the September 1, 2011 Hearing

In July 2011, Sudharshi filed an OSC regarding spousal and child support. The parties have one minor child. Sudharshi reported her income was $700 per month. Chaminda filed a responsive declaration and an income and expense declaration the following month. Chaminda indicated he had become unemployed in June 2011. His stated income consisted of $810 per month in unemployment benefits. He indicated he paid no rent or mortgage, and had a monthly payment on an automobile loan in the amount of $640.

The matter was heard on September 1, 2011. Chaminda appeared in propria persona; Sudharshi was represented by counsel. The court indicated that a decision regarding custody of the minor child would be made in December before a child custody evaluator, but in the meantime the child would begin residing with Chaminda so he could

---

[1] As is customary in marital dissolution actions in which the parties have the same last name, we refer to the parties by their first names, with no disrespect intended.

attend his former school, and Sudharshi would have custody of him three weekends a month. The court later noted that this resulted in Sudharshi having custody 35 percent of the time for purposes of setting child support.

Regarding the payment of support, Chaminda told the court he became unemployed because the business for which he worked, which was owned by his mother, closed down. He said he was looking for work as a bookkeeper but had no immediate prospects for employment. He said he was trying to get a bank loan to start a Subway franchise. He admitted to the court that his mother was helping him support his child and that he lived in a house owned by his mother for which he paid no rent or mortgage.

The court indicated that at the next hearing in December it wanted to see the records from the business for which Chaminda worked and which he claimed was solely his mother's because the court suspected he was hiding assets. The court also wanted to see his loan application, deducing his mother was signing it. The court continued: "And your mother's supporting you, and under California law that's income. . . . [Y]ou have unemployment. . . . I'm going to run a Dissomaster right now and you're going to start paying her money." Sudharshi's counsel pointed out that at a previous hearing Chaminda stated he was a partner in the business with his mother. The court recalled he had done so.

Chaminda said he would bring his business license and records to the next hearing. The court responded that Sudharshi's counsel was going to take Chaminda's deposition, and *he should produce all of the documents to her counsel by October 15, 2011*.

The court asked Chaminda if his mother put money in his bank account to help with his son, and he replied that she did, sometimes a few hundred dollars, sometimes one thousand dollars. He avoided giving a more precise answer.[2] The court stated, "I am assuming between the rent and your car that you're getting at least a thousand dollars a week from your mother and that is based on a house in Glendora, the mortgage being paid, the fact that all — the food is being paid, and the fact that you've testified that you

---

[2] Sudharshi's counsel represented Chaminda had transferred $100,000 to his mother a few months before.

were going to get a loan for a Subway. You have two cars." The court explained that the assistance he was getting from his family was deemed income, citing *In re Marriage of Alter* (2009) 171 Cal.App.4th 718. The court therefore imputed a monthly income of $5,600 to Chaminda, including his unemployment benefits. The court set spousal support at $1,100 per month and child support at $330 per month, retroactive to August 1, 2011.

Sudharshi's counsel raised the subject of attorney fees, but the court responded, "We're going to have a hearing in December. I've made my order now. Bring in all your evidence in December and I'll make my order then. I don't have — I need you to do that. Do you understand?" Chaminda said, "Okay." Counsel for the minor said, "So that I'm clear, I believe the only issues are custody, visitation, and support. Are you arguing property issues, counsel?" The court responded that Sudharshi's counsel was planning to argue attorney fees.

The minute order of the hearing states that Chaminda "is to provide a copy of all of the records and loan applications for the Subway Restaurant to this Court on the next Court date. [¶] [Chaminda] is to provide [Sudharshi's] Counsel with all requested information regarding employment by 10-15-11." The minute order provides the child support award was to continue until the child reached age 18 (or 19 if a high school student), married, died, became emancipated, or further order of the Court. The spousal support was in the amount set forth above "and continuing in a like manner until further order of the Court, death or remarriage." Finally, the court's minute order informed Sudharshi of the law of this state that upon making a spousal support order the court must inform the supported person that it is the goal of this state that each party shall make reasonable good faith efforts to become self-supporting within a reasonable period of time.

## II.     The December 14, 2011 Hearing

The reporter's transcript on appeal does not contain a transcript of the hearing held on this date. However, the minute order for that date describes the nature of the proceedings as "Respondent's OSC re: child support[,] spousal support[,] property

4

control[,] attorney fees and costs." The minute order further states that the court made its orders pursuant to the postevaluation stipulation and order regarding custody signed and filed on that date. The matter was continued to December 21, 2011.

## III.    The December 21, 2011 Hearing

After briefly discussing with the court Sudharshi's income and custody time, counsel for Chaminda made an offer of proof that Chaminda's application for a Subway franchise had been rejected and began discussing his mother's business. The court asked counsel, "Why do you think you are here today?" Counsel responded that "[t]he court was going to revisit the child and spousal support [issues]." The court said the hearing had not been continued, and noted that *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627 (*Gruen*) had recently been decided. Because the court had not continued the hearing for the purpose of considering support issues, it could not revisit those issues. The court said the continuance had been only for consideration of custody and visitation issues (after the parties had met with the custody evaluator at the "solution focu[sed] evaluation"). Counsel maintained the reporter's transcript of the September 1 hearing indicated otherwise. The court responded that it would not matter in any event because "[i]t is quite apparent to this court that your client is getting unreported perks, shall we say, from his mother, and that he wasn't paying for any of this, and he was being covered, and that is income under *In re Marriage of Alter*." The court continued: "[A]ssuming for argument's sake that it was here for support, I'm not changing my order from back then. That was clear. What I was going to revisit it about is what is going on now because I also gave [Sudharshi] a *Gavron* warning."[3] Chaminda's counsel said he would file an OSC, and the court agreed the OSC would address "what is going on now."

---

[3]    *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705.

**IV.     Chaminda's OSC and the Hearing of February 10, 2012**

Chaminda filed an OSC for modification of child and spousal support on December 23, 2011.  He attached a portion of the transcript of the September 1, 2011 hearing, bank statements, an email from Subway stating he had not passed the "Wonderlic Test" and they would not be proceeding with his franchise application, and documents related to his unemployment benefits.  He also filed an income and expense declaration in which he indicated his unemployment compensation was $1,950 per month, his monthly expenses totaled $2,510, and his girlfriend paid some of the household expenses.  He also stated he had paid his attorney $3,000 with a loan from his mother.

The hearing on the OSC took place on February 10, 2012.  The court stated that Chaminda's income and expense declaration indicated he is not paying any rent or mortgage while living in his mother's house; as such, he is being assisted by his family on a consistent basis.  His new income and expense declaration stated he made $350 more in unemployment compensation than his previous income and expense declaration had indicated, and also that he received assistance in an unspecified amount from his girlfriend.  In addition, the court made note of the fact Chaminda's mother had paid his counsel's $3,000 fee.  The court concluded that there was no significant change in Chaminda's situation since September and denied the motion.

This appeal followed.

**DISCUSSION**

**I.     Standard of Review**

An appellate court generally reviews child and spousal support orders for abuse of discretion.  (*In re Marriage of Alter*, *supra*, 171 Cal.App.4th 718, 730; *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 398.)  "In so doing, we determine '"whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion."  [Citation.]  We do not substitute our

6

own judgment for that of the trial court, but determine only if any judge reasonably could have made such an order.' (*In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 753 . . . .)" (*Alter*, *supra*, at pp. 730-731.) And in assessing whether substantial evidence supports the trial court's factual findings, we consider the evidence in the light most favorable to the party prevailing below. (*Plumas County Dept. of Child Support Services v. Rodriguez* (2008) 161 Cal.App.4th 1021, 1026.)

## II.    Contentions on Appeal

Chaminda contends on appeal that the trial court erred by refusing to consider altering its child and spousal support orders after it made a "temporary" support order at the hearing of September 1, 2011. We disagree. Chaminda's argument relies on three premises that are patently incorrect: (1) that the court believed it could not revisit the support issue, even prospectively, because it had not continued the matter for that purpose at the September 1 hearing; (2) that his OSC was "summarily denied," and "the court had no intention of changing the prior order and or findings from the September 01, 2011 hearing[,] [n]or was the court ever going to receive and or hear any evidence whatsoever that the court previously promised [Chaminda] the court would hear"; and (3) that the trial court "never made the finding that [Chaminda] received other than nominal cash gifts from his mother."

### A.    *Jurisdiction to Reconsider the Support Orders*

At the hearing of December 21, 2011, counsel for Chaminda and the court discussed whether the matter was before the court for further consideration of child and spousal support. Chaminda's counsel focused on what was said at the September 1, 2011 hearing by the trial court and the other participants, while the court focused on whether it had specifically continued the hearing for further consideration of the support order it made on that date, i.e., the support order made retroactively for the month of August 2011 and continuing thereafter. As the court clearly understood, it had jurisdiction to consider a *prospective* modification of support. The court said: "[A]ssuming for

7

argument's sake that it was here for support, I'm not changing my order *from back then*. That was clear. What I was going to revisit it about is what is going on now because I also gave [Sudharshi] a *Gavron* warning." (Italics added.) Chaminda's counsel said he would file an OSC, and the court agreed the OSC would address "*what is going on now*." (Italics added.)

In *Gruen*, *supra*, 191 Cal.App.4th 627, the appellate court concluded that a trial court lacks jurisdiction to retroactively modify a temporary support order to any date earlier than the date on which a proper pleading seeking modification of such order is filed. (*Id.* at p. 631; see *In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1062.) Subsequently, in *Freitas*, the same appellate court made clear that unless a trial court expressly reserves jurisdiction to amend a support award it has already made, such that the parties' clear expectation was that the original support awards were not final as to the months already past, the court could not reconsider the support awarded for those months. (*Freitas*, *supra*, at p. 1062; see also *Gruen*, *supra*, 191 Cal.App.4th at p. 639: ["[Wife] was entitled to rely on the amount of temporary support ordered without the threat of having to repay or credit [husband] with any portion of accrued support"].) Thus, the *Freitas* court held, "The trial court's original child and spousal support awards in this case were not fully dispositive of the rights of the parties with respect to the amount of support to be awarded for September and October 2010, and therefore did not constitute final support orders as to those months." (*Freitas*, *supra*, at pp. 1074-1075.) "[N]either *Gruen,* nor the authority upon which *Gruen* is based, precludes a trial court from reserving jurisdiction to amend a *nonfinal* order based on the anticipated presentation of additional evidence." (*Id.* at p. 1075.)

In the present case, the court was simply saying that its order establishing support retroactive to August 2011 and continuing thereafter (based upon Sudharshi's OSC to establish support) was a final order. The court had not expressly continued the hearing on Sudharshi's OSC for support and therefore the support awarded for the months of August 2011 through the time of the December 21, 2011 hearing was not subject to revision. The court made clear it would revisit the support award *prospectively* based on

8

then current circumstances ("what is going on now," including Sudharshi's efforts to become self-supporting) if Chaminda filed an OSC to modify support.[4]

In any event, whether the court "promised" at the hearing on September 1, 2011, to consider further evidence regarding support at subsequent hearings is irrelevant because Chaminda subsequently filed an OSC regarding support and, as we discuss in the section that follows this one, the court did in fact hear and consider it on February 10, 2012.

### B.        Consideration of New Evidence

Chaminda contends on appeal that his OSC was "summarily denied," and that the court erred by not allowing him to introduce any of the evidence it had previously promised to hear. The record on appeal reveals that this assertion is inaccurate. At the hearing of Chaminda's OSC on February 10, 2012, the court had before it Chaminda's moving papers, including all of the evidence he attached in support of his request for modification. The court recited into the record the salient facts demonstrated in his income and expense declaration and other documents, including that he made $350 more in unemployment compensation than his previous income and expense declaration had indicated, that he received assistance in an unspecified amount from his girlfriend, and that Chaminda's mother had paid his counsel's $3,000 fee. Based on these facts, and because Chaminda did not present any evidence to support his denial that his mother was supporting him in a manner that should be considered income, the court denied the request for modification based on its conclusion that there was no significant change in Chaminda's situation since September. The court plainly considered the evidence, did not refuse to hear or review anything offered by Chaminda, and correctly determined there was no change in circumstances to justify modifying the support order.

---

[4]        Though it is less than clear from appellant's opening brief, it does not appear that Chaminda is challenging on appeal the support awarded for the period of August 2011 through December 2011 (when he filed his OSC to modify support). Rather, he appears to argue that the court refused to ever reconsider the amount of the support awarded, including at the February 2012 hearing on his OSC.

9

C.      *Characterization of Family Monetary Contributions as "Nominal"*

Finally, we briefly note that Chaminda contends on appeal that the trial court "never made the finding that [Chaminda] received other than nominal cash gifts from his mother." Again, this is simply inaccurate and a misrepresentation of the record. Indeed, the court specified the amount of income it was imputing to Chaminda based on his mother's support: "I am assuming between the rent and your car that you're getting at least a thousand dollars a week from your mother and that is based on a house in Glendora, the mortgage being paid, the fact that all — the food is being paid, and the fact that you've testified that you were going to get a loan for a Subway. You have two cars." The court therefore imputed a monthly income of $5,600 to Chaminda, including his unemployment benefits, and set spousal and child support based on that income. Thus, the court found, based on the substantial evidence before it, that Chaminda was receiving more than nominal cash gifts from his mother. Accordingly, the court did not err in basing its support orders on the imputed income that resulted from the ongoing financial assistance it found Chaminda received from his family.

**DISPOSITION**

The order denying Chaminda's OSC to modify support is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                        SUZUKAWA, J.

We concur:


EPSTEIN, P. J.                          WILLHITE, J.

10