Filed 4/22/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| COUNTY OF SAN DIEGO DEPARTMENT OF CHILD SUPPORT SERVICES, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> C.A., <br><br> Defendant and Respondent. | D074172 <br><br> (Super. Ct. No. DF274505) |

APPEAL from an order of the Superior Court of San Diego County, Adam Wertheimer, Commissioner. Vacated and remanded.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Linda M. Gonzalez and Jennevee H. DeGuzman, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

The County of San Diego Department of Child Support Services (the Department) challenges the order denying its request for establishment of child support against C.A. (Mother), for her daughter J.H. J.H. resides in Maryland with her paternal grandmother, who has sole legal and physical custody. The Department contends the court's denial incorrectly applied Family Code[1] section 3951, subdivision (a) which eliminates a parent's obligation to pay child support when a relative is voluntarily supporting the parent's child and there is no compensation agreement between the parties. The Department contends the grandmother's custody status in this case is not "voluntary" as that term is used in the statute. We agree with the Department and vacate the order.

BACKGROUND AND PROCEDURAL FACTS

Mother and R.H. (Father) were married and living in Hawaii with their two-and-a-half-year-old daughter, J.H., when their marriage was dissolved in 2012. The court awarded legal custody to Mother and Father jointly and awarded Father with physical custody. Mother was awarded visitation. Father was ordered to maintain health care insurance for J.H.'s benefit. Mother was ordered to pay $70 per month directly to Father for child support.

In May 2012, Father moved with J.H. to Maryland, where Judith H., J.H.'s paternal grandmother (Grandmother), resided. Grandmother became the primary caregiver for J.H. in 2012, and in May 2013, she filed a complaint for legal and physical custody of J.H. in the Circuit Court for Montgomery County, State of Maryland.

---

[1] Further section references are to the Family Code unless otherwise indicated.

2

Grandmother alleged neither biological parent was in a position to care for J.H., and it was in J.H.'s best interests for Grandmother to have full legal and physical custody. Grandmother also sought a child support order against Mother and Father.

In August 2013, Grandmother filed a praecipe in the Maryland court requesting to enroll the Hawaii divorce decree as a foreign judgment in the State of Maryland, as well as an amended petition seeking to modify custody and visitation, granting her sole legal and physical custody. She also sought an order instructing Mother and Father to pay her child support.

Father did not contest Grandmother's request for custody. Mother was served with the Maryland summons, complaint for custody, domestic case information sheet, and a summons and the amended petition to modify the custody and visitation order; she did not file an answer or response. Grandmother sought a default judgment against Mother, and on November 15, 2013, the Maryland court granted sole legal and physical custody of J.H. to Grandmother. On September 2, 2014, the Maryland court entered a consent child support order that awarded $310 per month from Father, as well as additional arrearages.

The State of Maryland, on behalf of Grandmother, requested a child support order against Mother via a petition pursuant to the Uniform Interstate Family Support

3

Act (UIFSA).  Consistent with California law, the San Diego Department of Child Support Services filed a summons and complaint seeking to establish child support.[2]

At a hearing on the matter on February 26, 2018, the trial court concluded the lack of an agreement between Mother and Grandmother regarding child support payments left Grandmother without jurisdiction to pursue the payments.  The trial court commented: "It's not a guardianship.  It's a simple grandparent custody. . . .  Petitioner went to court and asked for an order giving her custody, a voluntary assumption of custodial rights. [¶] . . . [This is] not the same thing as one parent or another who has a law-imposed duty, each parent to support the child to their ability to each other.  It is someone who [has] voluntarily undertaken the support and care of the child without an agreement." Accordingly, the court denied the Department's request for a child support payment.  The Department timely appealed.  Respondents did not file briefs.

DISCUSSION

This appeal turns on the interpretation of section 3951, subdivision (a), which states that a parent is not obligated to compensate a relative for "the voluntary support of the parent's child" unless there is an agreement for compensation.  The Department contends that once Grandmother was awarded custody of J.H., her support of J.H. was

---

[2]    Local child support agencies (LCSA) in each California county have a duty to establish, modify, or enforce child support orders.  (§§ 17304, 17400, subd. (a), 17404, subd. (a).)  LCSA provide services to children whether or not they receive public assistance, including to persons residing outside the state.  (42 U.S.C. § 654(4)(A) & (6)(A); 45 C.F.R. § 303.7(d)(1) & (6) (2016); §§ 4002, subd. (a), 17400 subd.(a), 5700.307, subd. (a), 5700.704, subds. (a) & (b); Cal. Code Regs., tit. 22, § 117500, subd. (a).)

not voluntary because it was court-ordered. In the hearing on the matter, the trial court concluded that because Grandmother sought physical and legal custody, the subsequent court order had no impact on the voluntary nature of her actions. Thus, absent an agreement with Mother for Mother to pay child support, Mother was under no obligation to do so.

Although we typically review an order for child support for an abuse of discretion, we review questions of statutory interpretation de novo. (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1035 [interpretation of statute reviewed de novo]; *Asfaw v. Woldberhan* (2007) 147 Cal.App.4th 1407, 1414-1415.) "The objective of statutory interpretation is to ascertain and effectuate legislative intent. To accomplish that objective, courts must look first to the words of the statute, giving effect to their plain meaning. If those words are clear, we may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437.)

At issue is the meaning of the word "voluntary" in section 3951, subdivision (a), which states that "[a] parent is not bound to compensate the other parent, or a relative, for the voluntary support of the parent's child, without an agreement for compensation." The plain meaning of the word "voluntary" is that the action is "done, made, brought about, undertaken, etc., of one's own accord or by free choice." (Random House Unabridged Dict. (2d Ed. 1993) p. 2131.) Placed in the context of section 3951, it means the relative must be supporting the child of his or her own accord or by free choice. Thus, if a

5

relative is choosing to provide support for a child, the parent is not obligated to compensate the relative absent an agreement. (See § 3951, subd. (a).)

This is the meaning our colleagues in the Third District applied in *Plumas County Dept. of Child Support Services v. Rodriguez* (2008) 161 Cal.App.4th 1021 (*Plumas*). In *Plumas*, the court ordered the father to pay the mother monthly child support, but the mother was not ordered to pay any child support because she was the primary custodial parent. (*Id*. at p. 1024.) Subsequently, the child moved in with the mother's brother and sister-in-law (the Andersons) to finish high school, an arrangement with which everyone agreed. (*Id*. at p. 1025.) The father continued to make child support payments to the mother, who forwarded them to the Andersons, but the mother did not consistently send additional money. (*Ibid*.) When the Andersons applied for child support assistance, causing the county to initiate a child support action, the mother objected, citing section 3951. (*Plumas*, at p. 1025.) The trial court dismissed the action, finding the mother was the custodial parent and had no obligation to pay for support of a child in her custody. (*Ibid*.) It also concluded the absence of a contractual agreement between the mother and the Andersons prevented the Andersons from obtaining a judgment against the mother for child support. (*Id*. at p. 1026.)

The appellate court similarly concluded that section 3951 has "long been interpreted to deny compensation in intrafamily support arrangements *of the type at issue here*, unless the parties have an express agreement for support." (*Plumas*, *supra*, 161 Cal.App.4th at p. 1028, italics added.) It explained that when a relative "seeking

6

compensation from the other parent has no legal duty to support the child, the support at issue is 'voluntary' within the meaning of the statute." (*Id*. at p. 1030.)

The present case is not an example of the intrafamily support arrangement at issue in *Plumas*. Here, the Department's request is for a noncustodial parent, Mother, to pay child support, while in *Plumas* the request was for the custodial parent to pay child support. (*Plumas*, *supra*, 161 Cal.App.4th at p. 1026.) The dissolution records here show Mother is a noncustodial parent ordered to pay $70 per month in child support. There is no subsequent documentation in the record that indicates that order was ever modified or rescinded; the Hawaii divorce decree outlining the obligations of the parties was enrolled as a foreign judgment in Maryland. In contrast, the mother in *Plumas* had no support payment obligations at the outset because she was the custodial parent. (*Ibid*.)

Additionally, unlike in *Plumas,* where the parents and the Andersons agreed to have the child reside with the Andersons (*Plumas*, *supra*, 161 Cal.App.4th at p. 1025), here there is no evidence in the record of an agreement between Mother and Grandmother. Instead, when Grandmother filed a petition in 2013 alleging it was in J.H.'s best interests that Grandmother be granted sole legal and physical custody, Mother failed to respond.

*Plumas* provides a quintessential example of "voluntary support" for the child because the Andersons were not under court order and held no legal obligation to continue providing care. (See *Plumas*, *supra*, 161 Cal.App.4th at p. 1030 [lack of legal duty to provide support makes child support "voluntary"].) Similarly, when Grandmother

7

assumed the care of J.H. after Father moved to Maryland, she did so of her own accord.[3]

However, once the court issued its order awarding Grandmother sole legal and physical custody of J.H., she was no longer free to discontinue caring for J.H. At that point, Grandmother became legally obligated to "make long range decisions involving [J.H.'s] education, religious training, discipline, medical care, and other matters of major significance," as well as to "provide a home for [J.H.] and to make the day-to-day decisions required . . . ." (*Taylor v. Taylor* (Md.Ct.App. 1986) 508 A.2d 964, 967.) Once the court awarded Grandmother full legal physical custody, her support ceased being "voluntary."

Moreover, Grandmother's assumption of sole custody of J.H. did not eliminate Mother's legal obligation to support J.H. because the court's order did not terminate parental rights. (*County of Ventura v. Gonzalez* (2001) 88 Cal.App.4th 1120, 1123-1124 [parental obligation ends when parental rights are terminated]; *Burak v. Burak* (Md.Ct.App. 2017) 168 A.3d 883, 933 [parent may regain custody from third party by showing changed circumstances].) " 'California has a strong public policy in favor of

---

3      It is unclear if the arrangement would be considered voluntary under Maryland law, where in at least one case, a relative's voluntary assumption of responsibility over a minor child resulted in a legal obligation, even though there was no court order awarding custody. (See, e.g., *Owens v. Prince George's County Dep't. of Soc. Servs.* (Md.Spec.Ct.App. 2008) 957 A.2d 191, 203-204.) In *Owens,* an aunt took responsibility for her niece when the mother was unwilling and the father was unable to do so, and the administrative law judge concluded that by her actions, she assumed a legal responsibility to her niece such that her subsequent unwillingness to provide shelter was a basis for a child neglect charge. (*Ibid*.) We decline to draw a conclusion on this point because the Department focuses its appeal on the nature of Grandmother's relationship to J.H. after the court awarded her sole custody.

adequate child support,' " as expressed in the statutes that embody the statewide uniform child support guideline and place the interests of children as the state's top priority. (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 385; §§ 4050-4076.) "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life." (§ 4053, subd. (a).) Absolving Mother of her obligation to support J.H. is inconsistent with her parental duty to support her child (§ 3900) and the state's public policy of ensuring adequate child support (*Bodo,* at p. 385), and it would discourage relatives from seeking an award of legal and physical custody when a child is in need.

DISPOSITION

We vacate the order and remand the matter to the trial court for new proceedings consistent with this opinion.

HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


O'ROURKE, J.

9