Filed 7/15/24  Marriage of T.L. and S.L. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of T.L. and S.L. | |
| | D082044 |
| T.L., | |
| Appellant, | (Super. Ct. No. 18FL000838E) |
| v. | |
| S.L., | |
| Respondent; | |
| SAN DIEGO COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Deborah A. Cumba, Commissioner.  Affirmed in part, reversed in part, and remanded with directions.

Dennis Temko, for Appellant.

Cage & Miles, and John T. Sylvester, for Respondent S.L.

Rob Bonta, Attorney General, Cheryl L. Feiner, Senior Assistant Attorney General, Maureen C. Onyeagbako and Ricardo Enriquez, Deputy Attorneys General, for Respondent San Diego County Department of Child Support Services.

T.L. (Father) appeals from a family court order confirming a modification of child support and awarding attorney fees to S.L. (Mother). Father asserts three contentions of error. First, he argues the court failed to accurately calculate his actual monthly overtime earnings because it did not factor in evidence they had decreased due to a shift change and increased staffing. Second, he contends the court erred by declining to issue an order pursuant to *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 (*Ostler-Smith*) that would have accounted for his variable and unpredictable overtime earnings. Finally, he asserts the court neglected to explicitly and accurately assess the parties' relative ability to pay their legal fees when awarding Mother attorney fees.

We conclude the court's exercise of its discretion in determining Father's prospective income for purposes of calculating child support was not based upon substantial evidence. Accordingly, we reverse the child support portion of the order and remand for a new hearing consistent with this opinion. In all other respects, the order is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### Mother's July 2022 Request for Order to Modify Child Support and Obtain Attorney Fees and Costs

Father and Mother married in 2006. They had three children, who were minors when the couple separated in 2017. Father filed a petition for dissolution of marriage, which the court granted in May 2020. Pursuant to

2

the parties' marital settlement agreement, the court ordered the parties to abide by a shared physical custody schedule and required Father to pay Mother $1,293 per month in child support and $290 per month in spousal support.

Just over two years after their divorce, Mother sought to modify the child support order because the parents had stipulated to change their custody and visitation order and both parents' income had changed. She also requested that Father be ordered to pay her attorney fees and costs because Father refused to co-parent with her, directed significant correspondence through their attorneys, and earned a significantly higher income.

After two continuances, the court scheduled a hearing on Mother's motion for December 12, 2022. Father asked the court to again continue the hearing, alleging that initial discovery showed Mother received deposits into her bank account that were not disclosed in her income and expense declaration.

A.    *December 12, 2022 Hearing*

At the hearing on Mother's motion, the court declined to continue the matter again but indicated it would set a review hearing at which time it could evaluate any changed circumstances. Mother disclosed that she was no longer employed and, as of the end of November 2022, was receiving $450 per week in unemployment.

After some disagreement, the court calculated Father's physical custody time share at 31 percent. Father's counsel explained that Father's pay stubs from working as a canine police officer were somewhat complicated because they listed his base pay and then additional payments for canine training overtime, laundry, education, canine support, other types of

3

overtime, and working the graveyard shift.[1] She further proffered that while the education pay was consistent, Father might not be a dog handler by the next hearing. She also represented that Father had not worked the graveyard shift since June and no longer received graveyard differential income as a result. Additionally, she explained that Father worked significantly less overtime during the second half of 2022 because the police force had overcome staffing shortages. She also noted that overtime for working at concerts was only sporadically available. For these reasons, Father's counsel argued that using the average of Father's wages for all of 2022 resulted in an inflated number Father no longer earned. She requested that the court instead base child support on constants like Father's base salary, education pay, and disability pay, and then order Father to pay a percentage of his variable overtime income pursuant to an *Ostler-Smith*

---

[1] Father explained in an attachment to his December 2022 income and expense declaration that employees who are regularly scheduled to work the graveyard shift receive additional pay referred to as the "graveyard differential."

order.[2] Mother's counsel did not oppose utilizing such an order going forward.

Nonetheless, the court based Father's income on the average of his 2022 earnings, finding he earned $9,246 per month in wages, $6,228[3] in overtime, $350 in education pay, and $180 in Veteran's Administration disability pay (VA pay), for a total of $16,005. In calculating support due for a period of arrears from August 1, 2022, through November 30, 2022, the court determined Mother's gross income to be $4,583 per month. Using these figures, the court awarded Mother $2,623 in monthly child support for the arrears period. To determine support for December 1, 2022, going forward, the court used the same income figure of $16,005 for Father, but based Mother's income on her unemployment income of $1,950. It ordered Father to pay monthly child support of $3,164 and ordered Mother to make 10 job contacts per week.

---

[2] In *Ostler-Smith*, the trial court ordered the father to pay fixed monthly amounts of spousal and child support based on his monthly salary and then also pay a fixed percentage of his annual bonus to each individual. (*Ostler-Smith*, *supra*, 223 Cal.App.3d at pp. 41–42.) The court explained its reasoning as follows: " 'No future bonus is guaranteed. It would therefore not be appropriate to base a support order on Husband's bonus income and then require him to file motions to modify at such times as the bonus is reduced. It would be more fair to all parties to base the support order on Husband's income from salary and dividends, and to allocate a portion of the future bonus income to the children and to Wife by way of a percentage interest so that future litigation will not be necessary as the bonus income changes.' " (*Ibid.*) The reviewing court affirmed the order (*id*. at p. 55) and the so called "*Ostler-Smith*" order has become a tool for awarding support for variable income such as bonuses and sales commissions.

[3] This number should have been rounded up to $6,229.

The court reserved jurisdiction to modify support retroactive to August 1, 2022, and ordered the parties to file updated income and expense declarations before the next hearing. The court further indicated it would look at the request for the *Ostler-Smith* order at the review hearing explaining, "then we'll have [Father's] more recent pay stub. . . . [s]o we can see how it's evolving over those months." When Father's counsel objected that the monthly overtime amount the court relied upon was "inflated" and "would be a prejudice to [Father]," the court said, "I understand your position and will review this at the review hearing moving forward, and you're welcome to brief it at that time."

B.    *February 27, 2023 Hearing*

At the review hearing, counsel for the San Diego County Department of Child Support Services (the Department) started by explaining that the Department could not enforce an *Ostler-Smith* order.[4] Father's counsel then argued that the evidence she presented in her briefing showed that Mother earned an additional average of $1,030 per month for August through November 2022. Mother responded that two of the payments were for work she had already done, at least one of which had already been included in her reported income. She said the other payments were gifts from former employers or her mother for things like gas or her daughter's sports trip.

Turning to Father's income, Father urged the court to issue an *Ostler-Smith* order because it: (1) would not put him in a position where income he no longer earned was imputed to him, (2) would not prejudice Mother because he would have to pay support on any amount over his base pay, and (3) would

_____

[4]    Father's counsel later acknowledged that the Department could not garnish Father's wages under an *Ostler-Smith* order but argued such an order remained enforceable by the court.

6

be enforceable by the court. Mother responded that the parties had discussed the possibility of entering an *Ostler-Smith* order at a higher base amount but that Father had not responded.

As for Mother's attorney fees request, Mother's attorney argued it was warranted because they filed the initial "simple" request to modify child support based upon the parties' stipulation to reduce Father's timeshare. However, she explained that both parties subsequently incurred over $20,000 in legal fees because of discovery Father propounded to "find a couple of hundred-dollar deposits from her mom." Because Father's income vastly exceeded Mother's, Mother requested $22,000 in attorney fees.

Father responded that Mother had not met her burden in requesting fees and pointed out that the court had to find Father had the ability to pay. In particular, Father asked the court to consider that he carried $90,000 in credit card debt and, according to his most recent paycheck, brought home only $900 for all of his expenses at home.

At the conclusion of the hearing, the court declined to alter its December 2022 order regarding Mother's or Father's income. It explained that "[t]he court did not hear any evidence today that [Father's] income has significantly decreased, such that the current order would no longer be appropriate." Therefore, it declined to enter an *Ostler-Smith* order. The court awarded Mother $12,000 in attorney fees, finding there was a disparity in access to funds to retain counsel. Additionally, the court found it appropriate for Father to pay both parties' fees given the amount of litigation involved in the case. On this note, the court commented that, "[i]t is apparent to the court that this case was over-litigated, could have been resolved earlier, and entails unnecessary court appearances and motions

7

before the court." The court then set a review hearing to address Mother's job contacts and income.

## II.

## Father Requests a Statement of Decision

On March 7, 2023, Father filed a request for a statement of decision as to the December 12, 2022, and February 27, 2023 orders. The record does not reflect that the trial court subsequently issued a statement of decision.

## DISCUSSION

## I.

## Child Support Order

Father contends the trial court abused its discretion in grossly overestimating his current overtime earnings and declining to issue an *Ostler-Smith* order. Mother responds that the trial court appropriately exercised its discretion in relying on Father's average monthly earnings for 2022.

A. *Doctrine of Implied Findings*

As an initial matter, Mother and the Department submit that because Father did not request a statement of decision in a timely manner, he waived the right to obtain one. Further, having thus waived, they argue that under the doctrine of implied findings, we " 'must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence.' " (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248 (*McHugh*).) Father disputes this conclusion, arguing he was not entitled to request a statement of decision on a motion and, therefore, the doctrine of implied findings does not apply.

We disagree with Father's premise. Father relies upon Code of Civil Procedure section 632, which requires the court to "issue a statement of

8

decision explaining the factual and legal basis for its decision as to each of the principal controverted issues *at trial* upon the request of any party appearing at the trial." (Code Civ. Proc., § 632, italics added.) However, Family Code[5] section 3654 specifically provides as to family law cases that a trial court shall render a statement of decision regarding *an order* modifying a support order if requested by either party. (§ 3654.) Accordingly, we conclude Father could have requested a statement of decision as to either order.

Because Father had the option to request a statement of decision, as he ultimately did eight days after the February 2023 hearing, the question is whether he did so in a timely manner. Section 3654 does not contain a timing provision. Code of Civil Procedure section 632, by contrast, specifies that "[t]he request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision." (Code Civ. Proc., § 632.) In this case, the December 2022 hearing lasted for one hour and the February 2023 hearing appears to have concluded after approximately three hours. Thus, if we apply Code of Civil Procedure section 632, Father's request should have been made prior to submission of the matter at the conclusion of the second hearing.

Neither party provides authority suggesting that Code of Civil Procedure section 632 does not provide the requisite timing for requesting a statement of decision in the absence of such a provision in the more specific statute, section 3654. Further, at least one secondary source confirms that,

---

[5] Undesignated references are to the Family Code unless otherwise specified.

9

"[w]hen courts are required to render a statement of decision pursuant to a party's request, the procedure is governed by [Code of Civil Procedure] [sections] 632, 634 and [California Rules of Court, rule] 3.1590." (Hogoboom and King, Cal. Practice Guide: Family Law (The Rutter Group 2023) ¶ 15:135.) Several family law cases also appear to presume as much. (See, e.g., *In re Marriage of Cauley* (2006) 138 Cal.App.4th 1100, 1109 (*Cauley*) [finding request for written statement of decision on support order waived on appeal where appellant failed to mention request "[a]t the conclusion of the hearing"]; *In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, 1010 [finding request for statement of decision on support order timely where husband made the request just before closing argument].) Absent direction from the legislature or our Supreme Court, we presume the timing guidelines set forth in Code of Civil Procedure section 632 apply. Accordingly, Father's request eight days after the February 2023 hearing was untimely.

"[W]here a party remains silent at the hearing and fails to bring the issue to the trial court's attention, he or she waives the right to a statement." (*Cauley, supra,* 138 Cal.App.4th at p. 1109.) As Mother correctly notes, when a party waives the right to a statement of decision, we "presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence." (*McHugh, supra*, 231 Cal.App.4th at p. 1248.) "A party who does not request a statement of decision may not argue the trial court failed to make any finding required to support its decision." (*Ibid.*)

B.          *Calculation of Father's Income*

Father asserts he does not have the ability to pay the amount of child support the court ordered because the court's calculation of his income does not account for the demonstrated decrease in his overtime earnings or the volatility of his income.

10

An appellate court reviews child support orders for abuse of discretion. (*In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234; *County of San Diego v. P.B.* (2020) 55 Cal.App.5th 1058, 1068 (*County of San Diego*).) We assess whether substantial evidence supports the trial court's factual determinations and whether the court exercised its discretion in a reasonable manner. (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 730.) " 'We do not substitute our own judgment for that of the trial court, but determine only if any judge reasonably could have made such an order.' " (*Id.* at pp. 730–731.) However, "[i]n reviewing a child support order, 'we are mindful that "determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule." [Citation.]' " (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1312 (*Williamson*).)

In assessing whether substantial evidence supports the trial court's factual findings, we consider the evidence in the light most favorable to the party prevailing below. (*Plumas County Dept. of Child Support Services v. Rodriquez* (2008) 161 Cal.App.4th 1021, 1026 (*Plumas County*).) The order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found. (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1233–1234 (*Williams*).)

California has established uniform child support guidelines that require each parent to "pay for the support of the children according to the parent's ability," with the top priority being the interests of the children. (§ 4053, subds. (d) & (e).) Father does not dispute that his overtime wages should be included in the calculation of his annual gross income under

11

section 4058. He challenges only the court's inclusion of overtime pay he no longer receives.

The evidence explicitly and impliedly supporting the court's findings is that Father's annual gross income for 2022 was $189,930.54 which, when divided by 12 months, comes to $15,828 per month. Adding his nontaxable monthly VA pay of $180 to this total yields $16,008. The record contains a printout of the "Guideline Calculation Results Summary" for 2022 listing his "Monthly Taxable & Non-Taxable Gross Income" as $16,005. We infer the court's findings that this amount would continue to be accurate prospectively to be based upon evidence and argument by Mother demonstrating that his annual income had increased by anywhere from approximately $9,000 to $23,000 each year from 2017 to 2022.

The monthly net disposable income figure used to calculate guideline child support is calculated based on the monthly gross income. Section 4059 provides that "[t]he annual net disposable income of each parent shall be computed by deducting from the parent's annual gross income the actual amounts attributable to" taxes, retirement and disability benefits, union dues, health insurance, child and spousal support, job-related expenses, and hardships. (§ 4059.) The monthly net disposable income then is computed by dividing the annual net disposable income by 12. (§ 4060.) However, where the resulting figure "does not accurately reflect the actual or prospective earnings of the part[y] at the time the determination of support is made, the court may adjust the amount appropriately." (§ 4060.)

"The assumption underlying these calculations is that past income is a good measure of the future income from which the parent must pay support." (*County of Placer v. Andrade* (1997) 55 Cal.App.4th 1393, 1396 (*Andrade*).) But because this is not always the case, the law gives the court discretion to

12

adjust the income figure to accurately reflect the party's prospective earnings. (*Ibid.*) "The ultimate yardstick . . . is still a party's ability to pay" and "[t]he inquiry into a party's ability to pay is prospective in nature." (*In re Marriage of Pletcher* (2021) 68 Cal.App.5th 906, 913–914 (*Pletcher*).)

In this case, Father explained that his overtime pay prior to July 2022 was not predictive of his future overtime wages because (1) he no longer worked the graveyard shift, and (2) increased hiring decreased the availability of overtime hours. Father acknowledged that his overtime would continue to fluctuate[6] but argued these were concrete justifications for the court to find that an average of the last 12 months was not predictive of his prospective income. Furthermore, Father supported these statements at the December 2022 hearing with his pay stubs from the end of June 2022 through November 2022. These pay stubs showed that he no longer received a differential pay increase for working the graveyard shift and reflected significant decreases in average overtime.

Although the court stated at the December 2022 hearing that it would consider Father's most recent pay stubs at the review hearing to see how his income was "evolving over those months," it does not appear the court factored this evidence into its decision. More importantly, the court did not acknowledge that the pay stubs for the period from July 2022 through January 2023, which reflected consistently lower overtime pay and no graveyard differential, supported Father's assertion that he no longer worked the graveyard shift and had decreased access to overtime due to staffing increases. We cannot conclude the court relied on substantial evidence where the court seemingly disregarded relevant evidence. (See *Swan v. Hatchett*

---

6     It was for this reason that Father requested that the court impose an *Ostler-Smith* order to capture an accurate account of his overtime income.

(2023) 92 Cal.App.5th 1206, 1215, 1220.) Nor can we infer that the trial court made all factual findings necessary to support the order when substantial evidence does not support the conclusion that Father's average monthly gross income remained anywhere near $16,005 after July 2022, or was likely to return to this level based on the facts before the court. (*McHugh*, *supra*, 231 Cal.App.4th at pp. 1247–1248.)

It is true that basing an income calculation on too narrow a time frame may result in an arbitrary and unjustifiable child support order (see *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1083 [reversing support order where "the trial court chose an unrealistic time sample in order to . . . 'inflate' the supporting spouse's monthly income"]), but the same outcome may result when the time frame is too broad. Father's total 2022 income was the highest he had ever earned and, according to his declaration and pay stubs, encompassed a period of significant overtime due to staffing shortages and an assignment to the graveyard shift. Both circumstances changed mid-year. To nonetheless base his support obligation on the seemingly unrealistic assumption that he would continue to even have the option to earn this level of overtime runs the risk of falling victim to "the logical fallacy of extrapolation, in which some series of events in the past is necessarily assumed to continue in exactly the same way into the future." (*Id.* at p. 1086; see also *Pletcher*, *supra*, 68 Cal.App.5th at p. 914 [" ' "The theory is that the court is trying to predict *likely* income for the immediate *future*, as distinct from extraordinarily high or low income in the *past*." ' "].) Moreover, seven months of pay stubs is hardly an arbitrarily narrow window into his prospective salary expectations.

The record also does not appear to support an inference that Father simply manufactured a period of low overtime to decrease his child support

14

obligation. As an initial matter, it was Mother, not Father, who filed the request to alter support, which seems to decrease the likelihood that it was a scheme seven months in the making. Additionally, Father consistently argued below and on appeal for application of an *Ostler-Smith* order which, by design, would capture a percentage of *all* his overtime wages. In other words, he accepted that if his average overtime hours were to substantially increase again in the future, his children would be entitled to benefit from that increase.

In arguing in support of the order, Mother submits that *Andrade, supra,* 55 Cal.App.4th 1393 is instructive. In that case, the trial court declined to include income for two years prior to the previous 12 months in calculating the father's average income because those years included overtime and bonuses the father did not anticipate receiving in the future. (*Id.* at p. 1395.) He represented that his employer had cut overtime "back almost to nothing due to a merger." (*Ibid.*) The court explained that, where the father typically worked a regular, full-time work period and only occasionally received overtime and bonuses, the court was "not going to force him to work overtime." (*Ibid.*) The appellate court reversed, concluding "[t]he court cannot deduct predictable overtime and bonuses in determining Andrade's prospective earnings merely because they occur sporadically." (*Id.* at p. 1396.)

We agree *Andrade* is instructive, but contrary to Mother's interpretation, we conclude it demonstrates why the court's calculation in the instant case was an abuse of discretion. The *Andrade* court went on to explain that "[t]he question is whether the bonuses and overtime are likely to reoccur." (*Andrade, supra,* 55 Cal.App.4th at 1397.) The court could "disregard past bonus and overtime payments from the calculation only if it

15

determines that [parent was] unlikely to receive them in the future." (*Ibid.*) As the court explained, "[t]hat might occur because of changed employment conditions," which the court cautioned "should be shown by admissible evidence." (*Ibid.*)

Here, Father made clear that while he would likely continue to earn some overtime and expected to pay support on the same, he no longer received the graveyard differential and had decreased access to overtime opportunities because of increased staffing. Thus, the income from these sources was not likely to reoccur. Had Father simply made this assertion with no supporting proof, we might be inclined to find that the trial court simply disbelieved him—a credibility determination that we could not reweigh on appeal. (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) But Father presented seven months of pay stubs supporting his assertion of changed employment conditions and no one questioned the accuracy or admissibility of the statements.

Furthermore, even if we were willing to infer a finding that Father voluntarily switched from the graveyard shift to the day shift and could return,[7] this still would not redress our concern with the court's income calculation. In *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1215, 1219, a father resigned from a well-paying job to start his own business right before a child support hearing. At a review hearing, the family court imputed the salary from his prior job to him because he " 'had total control over his decision to stay in his existing employment or to leave.' " (*Id.* at p. 1215.) The reviewing court affirmed the judgment explaining, "[b]ecause children's interests are a top priority [citation] and payment of appropriate

---

[7] We are aware of no evidence in the record supporting these inferences.

16

support is a parent's primary obligation [citation], a child support obligation ' "must be taken into account whenever an obligor wishes to pursue a different lifestyle or endeavor. . . . [C]hild . . . support [is] an overhead which must be paid first before any other expenses. . . . [A payor does] not have the right to divest himself [or herself] of his [or her] earning ability at the expense of . . . minor children." ' " (*Id.* at p. 1218.) Here, even if we presuppose Father voluntary moved to the day shift and should be required to return to the graveyard shift, this would not alter his lack of *access* to overtime hours as a result of the increase in staffing. Although "a parent may have income imputed if he or she unreasonably fails to take advantage of an employment opportunity," the *Padilla* court made clear that "a parent cannot be held to an unavailable income level."[8] (*Id.* at p. 1217.)

Thus, we conclude substantial evidence did not support the trial court's implied determination that Father's peak level of overtime was a

---

[8] Furthermore, to the extent the court's findings included some consideration that he had the *capacity* to work significantly more overtime and the graveyard shift, as he had in the past, our high court has made clear "that earning capacity generally should not be based upon an extraordinary work regimen, but instead upon an objectively reasonable work regimen as it would exist at the time the determination of support is made." (*In re Marriage of Simpson, supra,* 4 Cal.4th at pp. 234–235.) That is not to say the court was limited by established employment norms like the 40-hour work week. (*Id.* at p. 236.) To the contrary, Father acknowledged that he will continue to work some amount of overtime for the foreseeable future. But he also stated in his February 2023 declaration that he did not want to continue "to work excessive hours or an onerous schedule that is beyond my usual shift and occasional training" because it had "been extremely taxing on my health and [took] away from [his] family life as well." Given his long history of working consistent overtime, it was well within the court's discretion to include overtime pay based upon substantial evidence in its calculation. But "[a] regimen requiring excessive hours or continuous, substantial overtime . . . generally should be considered extraordinary." (*Ibid.*)

17

circumstance likely to recur. (See *McHugh, supra,* 231 Cal.App.4th at pp. 1247–1248 [we only presume the trial court made all factual findings necessary to support the judgment where those factual findings are supported by substantial evidence].) We further conclude the error was prejudicial because, had the court averaged the seven months of pay stubs Father proffered, it is reasonably probable the court would have imposed a lower monthly child support obligation on Father.[9]

Regarding Father's request for an *Ostler-Smith* order, we observe that Father has not directed us to any authority holding that a court *must* utilize this option when faced with irregular overtime wages. To the contrary, Father acknowledges that an *Ostler-Smith* order would have been "preferable." Given the court's stated concern that this case was over-litigated, there is some logical appeal to considering this type of order to avoid additional litigation whenever Father's job status changes[10] while still ensuring Mother receives the benefit of any overtime fluctuations. However, the guidelines also allow the court to calculate annual gross income based on wages actually earned. (§ 4058.) Thus, we find no basis for concluding the trial court did not act within its discretion in opting to base support on an average income that included overtime wages—to the extent that figure is

---

[9] Because the trial court used the same $16,005 figure for Father's income in calculating support during the arrears period as well as from December 2022 forward, on remand the court is directed to make new orders for both periods based on the record of Father's gross monthly income before this court and not inconsistently with the views expressed in this opinion.

[10] For example, Father mentioned in his briefing and at the hearing that he might soon be removed from canine duty, which also affords him extra income.

based on overtime pay that substantial evidence showed was likely to recur. (*Andrade, supra,* 55 Cal.App.4th at p. 1397.)

C.     *Calculation of Mother's Income*

Father contends the court also abused its discretion by refusing to acknowledge additional income Mother received during the four-month arrears period, as reflected by her bank statements and Zelle receipts.  He points to evidence in the record showing she received an average of $5,903.25 per month instead of the $4,583 she claimed, and the court found. We are not persuaded.

As an initial matter, Father's counsel indicated during the February 2023 hearing that she had provided support for her claim regarding Mother's additional income in spreadsheets attached to her February filing as exhibit 3.  The first spreadsheet purportedly showed other sources of income paid to Mother, aside from W-2 reported income, during 2022.  Counsel represented that the second spreadsheet listed the same types of income for just the arrears period.  Exhibit 3 then apparently included "all of the evidence of those items" including bank records and Zelle receipts.  However, this exhibit is missing from the record on appeal and, as a result, cannot form a basis of support for Father's assertion.  It is incumbent upon the appellant to provide a record on appeal that is sufficient to allow the reviewing court to assess the purported error.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) When, as here, the record is inadequate for meaningful review, we resolve the issue against the appellant.  (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

Additionally, Mother's counsel explained during the hearing that the largest deposit on the spreadsheet, an electronic deposit on November 16, 2022, was Mother's last paycheck from her previous job, which

19

she had already included in her reported income. Mother represented that the remainder of the payments, which the court described as "fairly low amounts," constituted a payment for a contract job completed prior to the arrears period; a $100 transfer for helping with an open house; gifts from several longtime employers for gas, her daughter's sports trip, and other needs; and payments from her mother.

Construing the evidence in Mother's favor, we conclude the court impliedly found Mother's explanations credible and accepted that those transactions not previously accounted for in her income statement were primarily irregular gifts. The law does not uniformly require that gifts be treated as income. Some courts have treated them as such, particularly where " 'the gifts [bore] a reasonable relationship to the traditional meaning of income as a recurrent monetary benefit.' " (*Anna M. v. Jeffrey E.* (2017) 7 Cal.App.5th 439, 450; see also *In re Marriage of Alter*, *supra*, 171 Cal.App.4th at p. 737.) Others have not. (See, e.g., *County of San Diego*, *supra*, 55 Cal.App.5th at p. 1076; *Williamson*, *supra*, 226 Cal.App.4th at p. 1315 [affirming order counting annual tax-free gift of $26,000 as income but concluding other cash advances made upon request were not income].) Accordingly, Father has demonstrated no legal basis for concluding the court abused its discretion.

More importantly, as previously noted, we consider the evidence in the light most favorable to the party prevailing below (*Plumas County*, *supra*, 161 Cal.App.4th at p. 1026), in this case Mother, and will only reverse if Father meets his burden of demonstrating an abuse of discretion and resulting prejudice (*Williams*, *supra*, 150 Cal.App.4th at pp. 1233–1234). Because the evidence Father relies upon is missing from the record, we cannot fully assess whether the court's exercise of its discretion was based

20

upon substantial evidence.  As a result, we have no factual basis for concluding it was not.  Accordingly, we affirm the trial court's conclusion as to Mother's income during the arrears period.

II.

Legal Fees

Father next argues the trial court abused its discretion in awarding Mother $12,000 in attorney fees and costs because it did not make the appropriate findings under section 2030.  He further contends the award was premised on unsupported findings that Father had the ability to pay Mother's fees and that the case was "overlitigated."  We disagree.

"Pursuant to Family Code sections 2030 and 2032, the trial court is empowered to award fees and costs between the parties based on their relative circumstances in order to ensure parity of legal representation in the action." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 974.) "When a request for attorney's fees and costs is made, the court *shall* make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties." (§ 2030, subd. (a)(2), italics added.)  These findings must be explicit. (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 (*Morton*).)  The court must award attorney fees and costs "[i]f the findings demonstrate disparity in access and ability to pay." (*Ibid.*)

The making of an award under section 2030 and the amount thereof must be "just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).)  "In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent

21

practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b).)

We review a court's order granting attorney fees for abuse of discretion. (*Mooney v. Superior Court* (2016) 245 Cal.App.4th 523, 536.) "However, the court's 'decision must reflect an exercise of discretion and a consideration of the appropriate factors as set forth in code sections 2030 and 2032.' " (*In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 165.)

In this case, the court expressly stated on the record that it found an award of attorney fees and costs appropriate and that there was a disparity in access to funds to retain counsel. (§ 2030, subd. (a)(2).) Although the court used the $16,005 figure for Father's income that we found problematic *ante* in finding this disparity, even Father's acknowledged base income before overtime of $9,420[11] is significantly higher than Mother's past income of $4,873 and current unemployment income of $2,240.

The court did not explicitly find that Father was able to pay both parties' legal fees. However, in noting Father's high monthly income in relation to Mother's, the implication is that the court concluded Father had the ability to pay both parties' legal expenses. Furthermore, because Father did not request a statement of decision, he "may not argue the trial court failed to make any finding required to support its decision." (*McHugh*, *supra*, 231 Cal.App.4th at p. 1248.)

---

11    This is the amount he referenced at the February 2023 hearing.  In his declaration prior to the hearing, he indicated his salary plus other regular and recurring pay was $10,309.05.

Regardless, even if we were to determine the court did not make sufficiently explicit findings as to this third element, we would reverse only if the error was prejudicial. (*Morton*, *supra*, 27 Cal.App.5th at p. 1051.) Here, we conclude any error was harmless because it is not reasonably probable the court's explicit finding would have altered the outcome. (*Ibid*.) Father's counsel argued at the hearing that the court must consider Father's debt pursuant to section 4320 and his ability to pay both parties' fees. This is correct. In determining what is "just and reasonable," the court must consider "to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b).) Section 4320 includes such considerations as "[t]he extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage," "[t]he needs of each party," "[t]he obligations and assets" of each party, and the balance of hardships. (§ 4320, subds. (a), (d), (e) & (k).) But while the court is required to *consider* these factors, section 4320 does not require the court to make express *findings* as to them.

Furthermore, the record reflects that both parties carried significant debt. However, whereas Mother was unemployed, Father continued to earn a steady income and had at the very least, a self-acknowledged positive net monthly income of $900. The court required him to pay only $150 per month toward attorney fees, which it appears he had funds to pay. Thus, although neither party appears to be in good financial condition, substantial evidence supports the court's findings such that we cannot find prejudice on this record.[12]

---

[12] We also conclude the court did not abuse its discretion in finding it just and reasonable to require Father to pay Mother's attorney fees because Father "over-litigated" the case. "In addition to the parties' financial

23

## DISPOSITION

The February 27, 2023 child support order is reversed to the extent it based Father's support payments on a gross monthly income of $16,005 for the period of arrears from August 1, 2022, through November 30, 2022, and from December 1, 2022 forward. On remand, the court is directed to enter new orders for each period based on the record before this court of Father's gross monthly income after June 2022 and consistent with the views expressed in this opinion. In all other respects, the order is affirmed. Each party shall bear their own costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

IRION, J.

KELETY, J.

---

resources, the court may consider the parties' trial tactics." (*In re Marriage of Sharples, supra,* 223 Cal.App.4th at p. 165.) The record reflects that Father served many discovery requests in an effort to determine if Mother earned income beyond what she reported to the court. Ultimately, these requests yielded only the information discussed *infra.* As we previously determined, the court acted within its discretion in impliedly finding that the payments from Mother's former employers and mother were intermittent gifts and not sources of income. Thus, the court could reasonably have made the factual determination that these insignificant revelations did not warrant the extensive discovery required to unearth them. On appeal, we do not reweigh the evidence or assess the credibility of witnesses. (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 472.)

24